L. W. Thomas v. The Chicago, Milwaukee & St. Paul Railway Company, Appellant.

**Railroads:** TRESPASSERS.  A railroad company need not look out for a trespasser.  It owes him no duty except to avoid injuring him after he is actually seen.

INSTRUCTIONS.  It is error to charge that no "constant" lookout need be kept.

INFANTS.  These rules apply to children incapable of contributory negligence.  "Turntable cases," *distinguished.*

SAME.  The fact that trespassers have been numerous at the place of injury has no bearing on where the engineer first actually saw an injured trespasser.

SAME.  Where a charge makes this competent, it is not cured by a
3  special finding that the child was seen in time to avoid injuring it.

**Practice.**  A party may not complain of instructions and special
7  interrogatories which are similar to ones requested by him.

*Appeal from Marshall District Court.*—HON. D. R.
HINDMAN, Judge.

FRIDAY, JANUARY 18, 1895.

Action at law to recover damages for injuries
sustained by Earl Thomas, a minor son of the plaintiff,
through the alleged negligence of the defendant com-
pany.  Trial to a jury.  Verdict and judgment for
plaintiff, and defendant appeals.—*Reversed.*

*Mills & Keeler* for appellant.

*J. L. Carney* for appellee.

Deemer, J.—On the forenoon of May 15, 1890, Earl
Thomas, a minor son of plaintiff, aged three years and
ten months, was, with a little companion, playing upon
an open, uncovered bridge, located upon the defendant's
main line of road, about one thousand nine hundred
feet west of the station of Rhodes, and, while there at
play, was run over by a train going towards the west,
and his right foot and leg were so maimed and crushed
as to necessitate amputation.  It is averred in the peti-
tion that, without fault on the part of his parents, the
child went upon the track and the bridge, and was in
plain sight from the station, and at all points along
the road leading from the station to the place of acci-
dent; that defendant's employes, with knowledge that
the children were upon the track, started a train from
the water tank at the station, a distance of about ninety
rods from the bridge, westward (the engine being in
front, but with the tender foremost, and with the pilot

attached to the cars), and negligently and carelessly ran the train over the plaintiff's child; that there were four persons (the engineer, fireman, conductor, and brakeman) upon the engine, and each of them knew that the child was upon the track and bridge; that the employes of defendant negligently started the train, and, for some distance from the tank, did not look along the track over which they were going, or exercise any degree of care or caution in the operation of the train, or to discover whether or not the track was clear; that the train was a wild train, not running on schedule time, and was running with engine backwards; that the train was not manned with a sufficient number of brakemen; and that the engine was without steam or air brakes. Plaintiff further averred that the engineer and employes upon the train saw the child, with his playmate, upon the bridge, at a greater distance than was necessary, with proper effort, to stop the train, and knew the perilous position they were in, but that they negligently allowed the engine and train to approach and reach the bridge without signal of bell or whistle, and without any effort to stop the train, or remove the children from the track, and negligently and carelessly ran upon and injured plaintiff's child. The defendant, in its answer admitted the injury done to the child, by which it lost its leg, but denied each and every other allegation in the petition. On the issues thus joined, there was a trial to a jury, and a verdict returned for plaintiff, on which judgment was rendered, and defendant appeals.

The court below, in its instructions, eliminated from the case all charges of negligence, except the last one in the petition, viz., the one alleging that the defendant's employes were negligent, after they saw the children upon the track, in failing to use all available means at hand to stop the train, and avoid injuring them. This charge of negligence was submitted to

the jury, and, in answer to special interrogatories, the
jury found that the engineer and employes in charge of
the train did not do all they could, with the appliances
at hand, to stop the train as soon as they discovered the
children upon the track. The jury also found, spe-
cially, that the train could have been stopped by the
defendant's employes, with the appliances at hand,
after they saw the children on the bridge, in time to
have prevented the accident. And they further found
that the engineer did not whistle for brakes, and
reverse his engine, as soon as he knew the objects on
the track were young children. The court, in effect,
instructed the jury that defendant's employes were not
bound to anticipate that young children would be upon
the bridge in question, and in danger from passing
trains, and that they were not required to keep a con-
stant lookout to discover children on the track, and
that neither the fact that the engine was running back-
wards, nor that it was running at a high rate of speed,
would, of itself, constitute negligence. But it also
instructed that if the employes of defendant who were
operating the train saw the plaintiff's child upon the
railroad track or bridge, and knew that he was too
young to take care of himself, then they would not be
justified in assuming that the child would step aside
and avoid injury, and that in such case it would be the
duty of such employes to employ every available means
at their command to stop the train, and avoid injuring
the child, and, if they failed to do so, then the company
would be responsible. The court also gave proper
instructions with reference to the care required of
plaintiff to prevent his son's going upon the
track, and, further, gave the following: "You
are instructed that the bridge and track where
the plaintiff's son was injured was and is solely and
exclusively for the use of defendant in operating its

trains, and the plaintiff's son had no right or license of any kind to be there; and the fact, if it be a fact, that people constantly walked upon it, would not give them any right to do so. No matter how often people may have walked upon it, they would be doing so without right or authority; and any testimony that has been introduced tending to show that people occasionally walked upon it, if any such has been introduced, can only be considered by you in determining the question whether or not the engineer and employes in charge of the train actually saw the plaintiff's son in time to have stopped the train, before reaching the child, with the means and appliances then at their disposal." There was testimony in the case that the right of way where the child was injured was much frequented by pedestrians, in passing from a highway, a few rods west of the bridge, to the town of Rhodes, and the instruction was intended to apply to this state of facts.

We think the instruction is wrong—First, because the latter part of it entirely neutralizes the first part; and, second, because it announces an incorrect proposition of law. The first part of the instruction clearly announces the rule that the children were trespassers, and had no right or license to be upon the track or the bridge. If they were trespassers then the company owed them no duty until its employes actually saw them upon the track, and in a place of danger. Then, and not till then, did any active duty on the part of the defendant's employes commence. It has long been the established rule in this state that a railroad company is not required to keep a lookout for trespassers, and that it is not negligent in failing to discover them upon its track. This is an undoubted rule, sustained by an unbroken line of authorities. See *Masser v. Railway Co.*, 68 Iowa, 602, 27 N. W. Rep. 776; *Burg v. Railway Co.*, 90 Iowa, 106, 57 N. W. Rep. 680;

*Morris v. Railroad Co.*, 45 Iowa, 29; *Richards v. Railway Co.*, 81 Iowa, 426, 47 N. W. Rep. 63. We are aware that a different rule has been held in some of our sister states. See *Railroad Co. v. Grablin* (Neb.), 56 N. W. Rep. 796, and authorities cited. But the question cannot, in view of the cases before cited, be considered an open one here. It may also be remarked in this connection that a license to use the track of a railroad company may be inferred from frequent use, in connection with other circumstances from which an implied invitation may be inferred. See *Clampit v. Railroad Co.*, 84 Iowa, 71, 50 N. W. Rep. 674.

The instruction, however, assumes that there was no license to use the track and bridge of the defendant company; and yet it proceeds to say that the fact that persons occasionally walked upon the track may be considered, in determining whether the engineer saw the children or not, in time to have stopped the train. Clearly, this neutralizes and contradicts the first part of the instruction, and could have no other effect than to mislead and confound the jury. If defendant's employes were not required to be on the lookout for these children, because they were trespassers, and are not bound, in any case, to be on the lookout for trespassers, it is somewhat difficult to understand how the fact that persons occasionally trespassed upon the track at the place in question would throw any light upon the question as to when defendant's employes saw the plaintiff's child. The vice of the instruction becomes the more apparent when read in the light of the testimony that the engineer of the engine in question had never seen persons using the track as a footpath. Moreover, if there had been no such testimony from the engineer, the jury could not well infer that the engineer had seen others trespassing upon the track, for he was under no duty to look

out for them; and, being charged with no such duty, the inference is just as strong that he did not see them as that he did. Again, the latter part of the instruction is wrong because it practically announces the rule that if persons occasionally trespass upon the track of a railway, whether known to the employes of the company or not, that it then becomes the duty of the engineer of a train to look out for further trespassers upon the track; or, to put it in other words, that occasional trespasses, whether with the knowledge of the company or not, are material in determining the question as to whether a particular trespasser was seen by the engineer in charge of a train. Such a rule if established, would require an engineer to keep a constant lookout for trespassers on the whole of the line over which he is running. We do not think support can be found for such a rule in any case. It is insisted, however, that the instruction is without prejudice, because of the special findings of the jury, before set out, wherein it was found that the engineer saw the child in time to have stopped the train, and avoided the injury. We do not think so. The jury, in the condemned instruction, were directed to consider these occasional trespasses in determining the question as to when the engineer saw the children, and their finding as to when the engineer saw the children may have been based upon this faulty instruction. When error is committed, prejudice will be presumed, and it must affirmatively appear that the error was without prejudice.

II.   Counsel have discussed at some length the question as to whether a child of tender years can be a trespasser, or not, and appellee's counsel have cited some authorities holding that it cannot be.   Other authorities cited hold that a child of the age of the one injured in this case cannot be guilty of contributory

negligence.   The rule last referred to is unquestioned,
and we may say that there is no question of contribu-
tory negligence on the part of the child in this case.
The infant was of such tender years that it was not *sui
juris*, and we think, as a matter of law, it should be held
it was not guilty of contributory negligence in going
upon the track.   But the other is quite a different prop-
osition, and some confusion is apparent in the author-
ities, because courts have not always drawn proper dis-
tinction between trespassers and those who are guilty
of contributory negligence.   The reason, as we under-
stand it, why a trespasser cannot recover for injuries
inflicted upon him by the negligence of another, is
because the one who is negligent owes the trespasser
no duty, and is not required to be on the lookout for
him.   In order to maintain an action for negligence, it
must appear that there was a legal duty due from the
person inflicting the injury to the person on whom it
was inflicted, and that such duty was violated by a
want of care on the part of the wrongdoer commensu-
rate to the duty imposed.   Cooley, Torts, pp. 659, 660.
There must be a breach of some duty owing to plaintiff,
or to those whom he represents, to constitute action-
able negligence.   Now, as we have already seen, the
only duty the engineer of a train owes to a trespasser
is to avoid injuring him after his peril is discov-
ered.   And, in determining this question of duty,
it is entirely immaterial whether the trespasser
is *sui juris* or not, for the inquiry is not as to the ability
and capacity of the trespasser, but rather the duty of
the one who is charged with the negligent acts.   For
this reason the better considered cases hold that it is
entirely immaterial that the trespasser is an infant,
idiot, or lunatic, in determining whether he was a tres-
passer.   See *Burg v. Railway Co., supra; Masser v.
Railway Co., supra; Nolan v. Railroad Co.,* (Conn.).

Atl. Rep. 110; *Morrissey v. Railroad Co.*, 126 Mass. 380; *Chrystal v. Railroad Co.*, 105 N. Y. 170, 11 N. E. Rep. 380. When the duty once commences, no doubt a higher degree of care is required to avoid injuring a child, than is required where the trespasser is an adult. But active duty commences no sooner in one case than in the other. The reason why one who by his negligence directly contributes to his injury cannot recover, is entirely different. In such case, he, by his own volition, is in the wrong, and cannot be heard to take advantage of his own culpable neglect. Therefore, an infant, who is not *sui juris*, cannot be guilty of contributory negligence. With these distinctions in mind, most of the cases cited can be reconciled, and from them the rule deduced that a railroad company owes no duty to a trespasser, be he *sui juris* or not, until its employes actually discover him upon the track, and that the question as to the age of the child is not important in determining when the duty commences. But, where the question presented relates to the contributory negligence of the person injured, then his age is of great moment, for if he is not *sui juris* he cannot be held guilty of contributory negligence. In order that we may not be misunderstood, it is perhaps well to say that there is an apparent exception to the general rule above stated, in what are known as the "Turntable Cases." But we think the exception is not in fact an exception, but rather an extension of the principle to cover a different state of facts. In the turntable and other like cases, the defendants are held liable because the nature of the machine or agency which caused the injury was such as was well calculated—was of such a nature, and left in such a position, as that it was likely—to attract children. The temptation thus presented to children is, in the cases just

referred to, made to take the place of an express invitation to an adult, and with much reason.   See *Railroad Co. v. Stout,* 17 Wall. 657, and other cases cited in Beach, Contrib. Neg., section 207 *et seq.*   Without committing ourselves to the doctrine of this exception, it is sufficient to say that it has no application in the case at bar.

III.   In the sixth instruction the jury were told that defendant's employes were not required to be upon the *constant* lookout to discover children at that place,—the place of the accident.   In view of a retrial of the case, it is perhaps well to say that we think this instruction ought not to have been given.   While it does not directly say that the engineer was required to keep a lookout for trespassers, yet such meaning could well be placed upon the language used.   The inference is quite strong that, while he was not required to keep a constant lookout, yet some effort in this direction was required.   The case was presented to the jury on the theory that the child was a trespasser, pure and simple; and, as we have seen, the defendant did not owe it the duty to look out for it.   We would not reverse the case on this ground alone, and say what we do in order that the instruction may not be repeated upon a retrial.

IV.   In the eighth instruction the jury were directed to consider whether any of the employes on the defendant's train were negligent after they discovered the plaintiff's child upon the track, and measure the duty required of an employe under such circumstances as given.   And in the special interrogatories the jury were directed to answer as to whether any of the employes in charge of the train were negligent or not. It is insisted that this was error, because there was no evidence that any of the employes, other than the engineer, were negligent.   To this it may be said that, con-

ceding the error,—and this we do simply for the pur-
pose of the case,—it was one into which the
court was led by defendant's counsel.   In the
interrogatories submitted by them, they asked
for answers to substantially the same questions, and
in the instructions they presented, the same thought
was presented.   We do not think they are now in a
position to urge the objection.

V.   Appellant earnestly contends that there is no
evidence of negligence on the part of the engineer suf-
ficient to take the case to the jury.   In view of a retrial,
we do not think it advisable to discuss the question at
this time, and therefore dismiss it without further con-
sideration.

VI.   Other questions are discussed, but, as they
will not arise upon another trial, we do not consider
them.   It may be said, however, for the guidance of
the court, that the rule relating to impeaching testi-
mony was not observed as closely as it should have
been.   For the errors above pointed out, the judgment
of the District Court is *reversed*.