LOUISE SEARS *vs.* S. R. MERRICK & another, executors.
ANDREW T. SEARS *vs.* SAME.

Worcester.　　October 3, 1899. — December 6, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

*Personal Injuries — Unsafe Condition of Premises fitted for Use of Public —*
*Liability of Owner — Action.*

The front line of a building situated at the corner of A. Street and B. Street, which ran at right angles to each other, in the business section of a town, was set back from each street line. The whole space from the face of the building to the curbing of the sidewalk on each street was covered with concrete and presented

a uniform appearance, there being nothing to distinguish the part maintained by the town from the part owned and maintained by the owner of the building, and both parts were used openly and freely for public travel. The only exception to the uniformity of appearance was that on B. Street, a short distance from the corner of the building, there being a difference in grade in the concreted area, which terminated abruptly, a retaining wall separating the two grades was built two feet high where it began on the face of the building and ran about seven feet until it met the grade of the sidewalk, where it ended, and it had no fence or guard. A woman, who, on a dark night, had been transacting business at a store in a building owned and controlled by the defendant, the entrance to which was on A. Street, and who was unfamiliar with the premises, after leaving the building, proceeded along the concreted area on A. Street to the corner, and then round the corner on the concreted area on B. Street, stepped over the wall at a point about six feet from the building and within the part maintained by the owner, and fell, receiving injuries. *Held*, that she could maintain an action against the owner of the building for her injury.

TWO ACTIONS OF TORT, the first being for personal injuries sustained by the plaintiff upon premises of the defendants' intestate in Clinton, which are shown on the plan printed below;

and the second being for loss of the society and services of the plaintiff's wife, and for expenses incurred by him, owing to the injury sued for in the first case. The cases were tried together in the Superior Court, before *Braley*, J., who ruled that the plaintiffs were not entitled to recover ; directed the jury to return a verdict for the defendant in each case ; and, at the request of the plaintiffs, reported the case for the determination of this court. If the ruling was right, judgment was to be entered on the verdicts ; otherwise, judgment was to be entered for the plaintiff in each case, and the cases were to stand for the assessment of damages. The facts appear in the opinion.

*J. W. Corcoran*, for the plaintiffs.

*W. A. Gile & J. Smith*, for the defendants.

LORING, J. The defendants' testatrix owned a building, called the Brimhall block, situated on the corner of High and Church Streets, in the town of Clinton ; these streets run at right angles to each other, High Street running north and south, and Church Street east and west. The front line of the building on each street was·set back from the street line ; the whole space from the face of the building to the curbing of the sidewalk was covered with concrete, and presented a uniform appearance, except for the bank or retaining wall just round the corner on Church Street, hereinafter described. On High Street the building was set back fifteen and thirty-four one-hundredths feet, the whole sidewalk being but one foot wider. On Church Street it was set back at the easterly end eleven and seventy-one one-hundredths feet, and at the westerly end ten and twenty-seven one-hundredths feet, the sidewalk outside of the defendants' concreted area being seven and ninety-one one-hundredths feet in width ; that is to say, on High Street the whole sidewalk, including the defendants' concreted area and that within the side line of the street, was in round figures sixteen and one half feet wide, of which the defendants' concreted area was fifteen and one half feet, and the town's area was one foot ; and on Church Street the whole sidewalk was twenty feet in width, of which the defendants' area was twelve feet, and the town's eight feet.

It is expressly found in the report that at the time of the accident the premises where the accident occurred were owned

and controlled by the defendants' testatrix; that the area in front of her building on High Street, fifteen and one half feet wide, was "wrought and prepared," and that in front of her building on Church Street, twelve feet wide, was "prepared and maintained," by her; that the sidewalks on both streets, throughout their entire width, were covered with concrete, and presented a uniform appearance, there being nothing to distinguish the part maintained by the town from the part prepared by the defendants' testatrix, and both parts were used openly and freely for public travel.

The corner of the defendants' building at the junction of the two streets was rounded so as to admit of a window being placed in the round corner wall so made. There is a sharp descent in the grade of the High Street sidewalk, beginning at a point on the face of the defendants' building on High Street, a few feet north of the beginning of the rounded corner, and running thence across the concreted area to the southerly curbstone of the sidewalk of Church Street. Church Street also descends rapidly going west from High Street. The grade of the concreted area next the face of the building on Church Street is lower than the concreted area at the corner of the street; this difference in grade terminates abruptly at the point on Church Street where the curve of the round corner of the building begins. At that point the defendants' concreted area on Church Street is two feet lower than the defendants' concreted area on the round corner of the building; the two are separated by a bank or retaining wall, which is two feet high where it begins on the face of Brimhall block, and which runs southerly toward the south curb of the Church Street sidewalk a distance of six and ninety one-hundredths feet, where it meets the grade of the sidewalk and ends. There was no fence or guard of any kind on this retaining wall.

About eight o'clock in the evening on February 2, 1897, the plaintiff in the first case, with her husband, who was the plaintiff in the second case, came to Clinton for the first time. They went to the store of Lucius Field and Company, in Brimhall block, on business; the door of this store is on High Street, about forty-seven feet north from the corner of Church Street. On leaving this store they proceeded to walk to a building on

Church Street, known as the Dooley building, about one hundred and forty-five feet west from the corner of High Street. The night was dark. The plaintiff in the first case was walking beside her husband, who was on the street side of her and about ten inches distant. When she came to the retaining wall she stepped over it and fell, and was injured thereby; and it is for that injury that these two actions are brought. The point where she stepped over the retaining wall was about a foot from its outer end; that is to say, about six feet from the face of the building of the defendants' testatrix on Church Street. No question was raised as to the exercise of due care on the part of the plaintiffs.

The defendants contend that the whole situation, the retaining wall, the fence at the west line of the premises of the defendants' testatrix, and the buildings below coming out to the line of the sidewalk, showed that the open area was not a part of the public street, and effectually negative any implied invitation by the defendants' testatrix to pass over her land, and that on that ground the ruling of the presiding justice was right.

It appears from the plans and photographs made part of the bill of exceptions that Brimhall block extends on Church Street about one hundred and five feet; then comes a thirteen foot way between Brimhall block and another building of the defendants' testatrix, called the Courant building, twenty-five feet wide; beyond this building is a building known as the Dooley building, beyond that is an alley way, and beyond the alley way is a wooden building known as the Fitch building. The Courant building is set back on the same line as that of the Brimhall block, and the Dooley building is set back a little farther still.

The whole sidewalk, twenty feet wide, in front of the two buildings of the defendants' testatrix, from High Street to the westerly line of the Courant building, that is, to the easterly line of the Dooley building, including the part which is within the street line and that within the line of private ownership, is concreted and uniform in appearance. The grade of the private concreted area in front of the Dooley building is lower than that of the eight foot sidewalk in front of it, which again

is the same as the grade of the concreted area in front of the Courant building. The two concreted areas are divided by a bank wall, on which is an iron fence made of two iron pipes supported by two iron standards, the outer standard being placed at a point a little nearer the Dooley building than the inner side line of the town sidewalk eight feet wide; at that point the grade of the top line of the bank wall meets the grade of the sidewalk, and the bank wall ends. Just east of this standard is a column supporting a sign, on which is painted, " Courant Office. Job Printing." Beyond the Dooley building, and between that and the Fitch building, is a cross street or alley way running from Church Street past the Dooley building on a steep down grade; the easterly side of this alley way is supported by a bank wall which runs out into the public sidewalk before it reaches the grade of the sidewalk, and is protected by an iron fence similar to the one on the bank wall on the easterly line of the concreted area in front of the Dooley building; the standard at the outer end of that fence nearest the street being on the northerly or inner side line of the town sidewalk. The Fitch building is nearly out to the northerly line of the town sidewalk, and is set back therefrom some two or three feet, and has a concreted sidewalk covering the whole area in front of it. Beyond and west of the Fitch building there are fences on the line of the town sidewalk, evidently inclosing gardens, the houses being set back, and being hidden by the Fitch building from the view of one standing at the corner of Church and High Streets, from which point the photographs put in evidence were taken.

On the night of the accident the plaintiffs had been to the store of Lucius Field and Company on business. The only access to or from that store was over the defendants' High Street area fifteen and one half feet wide. It is clear, therefore, that the plaintiffs, on leaving Field and Company's store and walking over the concreted area of the defendants' testatrix fifteen and one half feet wide, for the distance of forty-seven feet to the end of Brimhall block on the corner of High and Church Streets, were doing so under an invitation from the defendants' testatrix, and that she owed them the duty of using due care to keep that area, which was the only access to that store, in a safe condition,

on the well settled principle that the owner of real estate who fits it up for business owes to those coming there on business the duty of using due care to keep the access thereto in a safe condition. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216. *Curtis* v. *Kiley,* 153 Mass. 123. It is also clear that the invitation and duty did not cease when the plaintiffs reached the end of the block at the corner. The plaintiffs could not reach that part of the concreted surface of the Church Street sidewalk within the side line of that street without crossing the intervening twelve feet of concrete on the land of the defendants' testatrix. No matter whether they continued in a straight line parallel with the side lines of High Street or in the more natural way by following substantially the lines of the rounded corner of the defendants' building, they had to continue on the defendants' concreted area for twelve feet or more beyond the corner before they could reach the eight feet of concrete sidewalk within the side line of Church Street. And further, it is clear that the invitation did not stop at the corner ; the same concrete sidewalk, uniform throughout its entire width, without regard to its being on the land of the defendants' testatrix or within the side line of the street, continued around the corner and down Church Street. The only apparent difference was that the whole sidewalk was some three feet wider than that on High Street. As matter of fact eight feet of the twenty foot sidewalk on Church Street was within the limits of the street in place of one foot of the sixteen and one half foot sidewalk on High Street ; but there was nothing whatever in the appearance of the Church Street sidewalk to tell the plaintiff that fact. The retaining wall, if she had seen it, did not tell her that fact ; that ended six and ninety one-hundredths feet from the face of the building, leaving just short of five feet between that and the inner or northerly line of Church Street. There is nothing, then, at the easterly end of the defendants' area on Church Street which divides that area twelve feet wide from the town area eight feet wide ; and for that reason the aspect of the place at the corner does not confine a person to the town's eight feet of the twenty foot concrete sidewalk, uniform in appearance throughout its entire width of twenty feet, as explained above.

The report does not state whether at the time of the accident

the general aspect of the *locus* extending one hundred and forty-five feet from the corner was actually visible to one standing on the corner of High and Church Streets; the report does state that the night was dark, and the plaintiff in the first suit testified that it was very dark; the Fitch building, which practically marked the final contraction of the concreted area to the eight foot town sidewalk, was one hundred and eighty feet distant; the iron fence on the retaining wall separating the grade of the defendants' concreted area from that in front of the Dooley building was one hundred and forty-five feet distant.

But, giving to the defendants' testatrix the benefit of all that the general aspect of the whole *locus* would give her, there was nothing which told one in the situation of the plaintiff at the corner of High and Church Streets that the invitation under which she had been travelling up to that point had ended and that she was not invited to continue on the same concreted area which she had traversed by invitation since she left Field and Company's store, and which continued around the corner down Church Street, uniform in appearance except for the retaining wall, to the end of the premises of the defendants' testatrix, one hundred and forty-five feet distant. The message given by the partial contraction of the concreted area at the Fitch building one hundred and eighty feet away, thirty-five feet beyond the westerly end of the area in question, and the final contraction of it to the town sidewalk of eight feet in front of fenced gardens still farther west, would more naturally be interpreted by a man of ordinary intelligence and prudence (see *Chenery* v. *Fitchburg Railroad*, 160 Mass. 211) to be that at that point the necessity ceased for the wide sidewalk, which was rendered necessary by the more important commercial character of the buildings in the immediate vicinity of the corner where the two principal thoroughfares of the town met.

Not only is it the fact that on a fair consideration of the general aspect of the *locus* this is the message told to a man of ordinary prudence and intelligence, but the arrangement by the defendants' testatrix of the sidewalk on High Street shows that it is what she intended should be understood. For one hundred and thirty feet from the corner of Church Street the buildings on High Street, including Brimhall block, are set back fifteen and

one half feet. For the first ninety of this one hundred and thirty feet the sidewalk is sixteen and one half feet wide, one foot only being within the side line of the street. For the next forty feet the sidewalk is seven feet wider, that is to say, twenty-three and one half feet wide ; it is evident that for the first ninety feet the seven feet of the eight foot town sidewalk had been thrown into the street between the curbstones, to make that part of the street wider because the character of the stores at that point demanded it. Beyond the one hundred and thirty feet the buildings are set back six feet only, in place of fifteen and one half, and the sidewalk is fourteen feet wide, eight feet being within the side line of the street.

It is evident what the defendants' testatrix intended when she, acting in concert with her neighbors, placed Brimhall block fifteen and one half feet back from the street line and made it possible, first, to have a sixteen and one half foot sidewalk in front of her store, uniform in appearance, and, second, to throw into the street between the curbstones seven feet of the eight foot town sidewalk which reached to that point ; it is evident that she intended her concreted area of fifteen and one half feet to be used as the public sidewalk, one foot only being within the side line of the street ; and the fact that for the first ninety feet the sidewalk is but sixteen and one half feet wide and for the next forty feet is twenty-three and one half feet wide, and that beyond the buildings are not set back so far and the concreted area is narrowed to fourteen feet, does not negative this intention, but says that the occasion for the wider sidewalk, partly private and partly public, ceased at that point.

There is nothing in the defendants' suggestion that the plaintiff was cutting corners, if that were material. The plaintiff fell over the retaining wall at a point six feet out from the corner ; the exact width of the sidewalk was nineteen and one half feet ; she was walking about ten inches nearer the building than her husband. He therefore was well within the middle third of the sidewalk. The plaintiff was where she was invited to be.

The defendants' testatrix having invited the plaintiffs to use the concreted area as a sidewalk, was bound to use due care to keep it in a safe condition ; allowing this retaining wall to remain unfenced was, or at any rate might have been found to be,

a breach of that duty; the ruling excepted to was wrong; and by the terms of the report judgment is to be entered for the plaintiff in each case, and the cases are to stand for the assessment of damages.                                *So ordered.*