PHYLLIS R. BECKWITH *vs.* SOMERSET THEATRES, INC.

Somerset. Opinion, July 20, 1942.

*Donald N. Sweeney*, for the plaintiff.

*Clayton E. Eames*, for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

WORSTER, J. On exceptions to the direction of a verdict for the defendant.

In this action the plaintiff seeks to recover damages for personal injuries suffered by her when the automobile she was driving struck a large concrete block on the defendant's land, which abutted a highway on which she had been traveling, and also for damages for injuries to the automobile caused by that impact.

There are no buildings on this land, which is about forty feet wide, located at one of the busiest street corners in the village of Skowhegan, and bounded on the east by Court Street, on the west by the railroad tracks, and on the south by Russell Street. Automobiles are regularly parked on said land, onto which they may be driven from either Court Street or Russell Street, right over the lines and letters painted on the macadam surface. The land is surfaced with the same material as is Court Street, with which it is on a level at the line of contact, but going from Court Street toward the railroad tracks there is a slight up grade.

About six o'clock on the afternoon of November 23, 1940, the plaintiff, a resident of Presque Isle, who had been calling on a friend in Norridgewock, who had a shop on Water Street in Skowhegan, started, in that street, to go to Bangor, where she had to be that evening. There was no snow on the ground. The plaintiff said she thought it was raining or misting, but was

not positive about it. She made a left hand turn and started to drive the automobile up Court Street, traveling, according to her estimate, at about fifteen miles an hour. The automobile lights were on. She said she could not state whether or not she noticed the street light at a corner which was evidently indicated to her on a chalk on the blackboard, although the location thereof is not shown in the record, but she testified that probably she did. She had not gone more than three or four car lengths past the intersection of Water and Court Streets when she discovered that she was on the wrong road. She immediately made a sharp turn to the left, to get back onto Water Street, traveling then at an estimated speed of five to ten miles an hour. In making this turn, she drove onto said land of the defendant and struck the concrete block, of which she had no previous knowledge.

The alleged negligence complained of was the erection and maintenance, without any warning of danger, of a large, three-sided, light colored concrete block, located wholly on said dedendant's land, and marking the corner thereof at the junction of Russell Street and Court Street, thus creating what the plaintiff claims was, in the circumstances of the case, a dangerous condition.

The block had two straight sides, each of which was about five feet long. One side faced Court Street, and the other side faced Russell Street. It was about seven feet from the ends of the sides farthest from the corner, passing around the circular back of the block. The average height of the block was somewhere thirteen to fifteen inches. There was a cavity or hole inside of it, and some time in 1940, prior to November of that year, a plank, probably six feet long, stood upright therein, but it was not there at the time of the accident. At that time the block was unpainted, but it has since then been painted a bright red color, and a painted post has been erected therein.

The defendant contends that it had a legal right to erect and maintain that concrete block on its own land to mark the corner thereof.

There is not the slightest doubt but that owners of property abutting a public highway have a right to suitably mark the corners of their land with appropriate markers, so long as this right is exercised with due regard and respect to the rights of others, and especially to the rights of travelers lawfully using the highway. Such owners, however, must use reasonable care to keep their premises abutting the highway in such a condition as not to endanger travelers in their lawful use of the highway. See *Ruocco, Admr.* v. *United Advertising Corporation et al.*, 98 Conn., 241, 119 A., 48, 30 A. L. R., 1237, and cases therein cited.

But the defendant claims that this land was purely private property, of which the public was suitably warned, and that the plaintiff was a trespasser thereon, to whom the defendant owed no duty except not to wilfully or wantonly injure her.

There was evidence to the effect that there was a painted line on the macadam surface, marking the line where the defendant's land abutted Court Street, but, even after the accident, the plaintiff says that she did not see it. There was no evidence as to whether or not, at that time in late November, the line was still distinct and plainly visible, or whether it was in any way distinguishable from the ordinary street traffic lines which are frequently painted on the surface of the highway. Another painted line marked the southerly bound of the land where it abutted on Russell Street. Inside these lines, the words "Private Property" and "Keep Out" were painted on the macadam surface of this land, on the Court Street side thereof, near to the concrete block; and the words "Keep Out" were painted on the macadam surface of the land on the Russell Street side. It does not appear whether these words were then plainly readable, or whether the paint had faded. And it does not appear that they were so located as to be so visible to, or readable by the plaintiff, from the position she occupied just before the accident. Nor is there anything in the record to show whether or not she actually saw these words, unless it can be inferred from her testimony that she did not see them. She testified in part as follows:

"Q. After turning on Court Street what did you then do?

"A. I turned around in a large area there that I thought was large enough to turn in.

"Q. Was this area paved or macadamized at the time?
"A. Yes.

"Q. Was it at the same or similar level as the street?
"A. Yes.

"Q. Did you think you were turning in the street?
"A. Yes."

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you at any time during your turning realize that you were not in the street?

"A. No; because I thought it was a paved way. I thought it was all street. There were no sidewalks or anything there."

If a person so surfaces and maintains his land abutting on a public highway as to indicate to the traveling public that such land is included in and is a part of such highway, with no sufficient warning to the contrary, he impliedly invites or allures travelers lawfully on the highway to drive over that land as if it were a part of such highway, provided such travelers did not know that the land was private property. In such circumstances, the travelers would not be trespassers on the land, but invitees, to whom the land owner owes the duty of keeping it in a reasonably safe condition for such travel. See *Leighton* v. *Dean,* 117 Me., 40, 102 A., 565; *Holmes* v. *Drew,* 151 Mass., 578, 25 N. E., 22; *Zetler* v. *Jame Realty Co.,* 185 Wis., 205, 201 N. W., 252; *Sears* v. *Merrick et al.,* 175 Mass., 25, 33, 55 N. E., 476, 7 Am. Neg. Rep.,.58.

Whether or not this land of the defendant was so surfaced and maintained as to amount to an implied invitation to such travelers to use it as if it were a part of the public highway on which it abutted, and if so, whether the owner kept the

premises in a reasonably safe condition for such travel; and whether or not the plaintiff was guilty of contributory negligence in the use thereof; were all questions of fact which should have been submitted to the jury under appropriate instructions. *Stratton* v. *Staples*, 59 Me., 94.

The court erred in directing a verdict for the defendant.

*Exceptions sustained.*