Merlin Jasper, appellee, v. Chicago Great Western Railway
Company, a corporation, appellant.

No. 49194.

(Reported in 84 N.W.2d 21)

June 26, 1957.

Opinion Modified and Rehearing Denied

September 20, 1957.

Evans, Duncan, Jones, Hughes & Riley, of Des Moines, and Kenline, Roedell, Hoffman & Reynolds, of Dubuque, for appellant.

Clewell, Cooney & Fuerste, of Dubuque, for appellee.

GARFIELD, J.—This is a law action to recover damages for destruction of plaintiff's automobile when struck by defendant's freight train at what plaintiff alleges appeared to be a public highway crossing in the country. From jury verdict and judgment for plaintiff of $1306 defendant has appealed.

Defendant contends: 1) plaintiff was contributorily negligent as a matter of law, 2) it owed plaintiff no duty to erect barricades or warning signs near the alleged crossing, and 3) there was no evidence to support the claim of defendant's negligence in operating its train. Principal argument in support of

the second contention and one of two arguments to support the third is that plaintiff was a trespasser upon defendant's track and it owed him no duty except to exercise reasonable care to avoid injury to his car after discovering its presence on the track.

It is of course our duty to consider the evidence in the light most favorable to plaintiff. Aitchison v. Reter, 245 Iowa 1005, 1009, 64 N.W.2d 923, 925, cited by defendant.

The collision occurred about 1½ miles east of Dyersville. Defendant's track runs generally east and west about parallel to and 180 feet north of the Illinois Central railroad track. Paved U. S. Highway 20 also runs generally east and west about 900 feet south of the Illinois Central track. A public road known as Prier's Road extends north from U. S. 20 across both railroads and then turns east. None of these directions is true to the compass.

In July 1954 this road between the two sets of tracks was not straight and its elevation was not uniform. Dubuque County decided to regrade the entire road and to straighten and level it between the two railroads. Straightening the road required moving the crossing over defendant's track about 70 feet to the east of its then location. One or more officials of the county asked representatives of defendant if it was all right to relocate this crossing and if the county could use dirt from defendant's right of way in making fills for the new grade. Defendant's representatives assented to both inquiries. The rights of way of the two railroads comprise all the land between the two tracks at this location.

The county commenced work on the road on or before August 1. The improvement was virtually completed by September 13 except for a strip 200 feet long north from defendant's track. At the north end of this stretch a culvert was to be placed across the road but its delivery was delayed. Between the track and the place for the culvert the rough grading was done but it was not smoothly graded and on the night of the collision an automobile could be driven over this part of the road, if at all, only with difficulty. Because of the delay in delivering the culvert the county's road making equipment was moved from the job to another location on September 13.

Plaintiff is a farmer living near Manchester. On the night of September 16 he drove his 1953 Chevrolet sedan north from Highway 20 on the new grade of Prier's Road. His wife and two small children were with him. He was going to visit a brother who lived farther north and east on this road. It was a very dark and rainy night. The new road from U. S. 20 to defendant's track was smoothly graded and appeared to be finished. Plaintiff could see the road north of defendant's track looked a little rough. But the road appeared to continue across on the north side of the track. There were no signs or barriers to indicate the road was being worked.

Plaintiff's automobile was almost on top of defendant's track before he noticed there were no planks between the rails. He tried to stop but his car slid across the south rail and suddenly became stuck between the rails which were 6½ inches high. He and his wife did their best to move the automobile off the track but could not do so. While so engaged plaintiff saw the railroad signal light change color. He ran to the nearest farmhouse to telephone to Dyersville in an attempt to stop the eastbound train but it was too late. The train struck and demolished the automobile.

On the night in question the crossing by defendant's track over the old road was still in place about 70 feet west of the point where plaintiff's car was struck. And approximately the north half of the old road between the Illinois Central track and defendant's track, leading to the old crossing; was still in existence. However, the new grade was four to six feet higher than the old road at this halfway point. To get from the new road to the old one at this place plaintiff would have had to turn left (west) and descend this rather abrupt slope of four feet or more. Plaintiff testifies, "You would drop about five or six feet when you drove onto that." The new fill covered about the south half of the old road between the two railroads.

There is much evidence that on the night of the collision it was hard to see the old road leading off to the left from the new grade. Defendant's track foreman frankly admits he could not see this "turn-off" with the lights of the jeep in which he rode on the new grade soon after the accident. Plaintiff believed

the new road was completed and did not know anything was left of the old one nor that there was a turn-off onto it. He did not see it.

There is testimony that a mound of dirt one to two feet high was left on the south side of defendant's track for about half the width of the new roadway. But there is substantial evidence this mound had been moved before the night of September 16. There is also testimony that a sign about two feet square with the words "Road Closed" was in place where Prier's Road meets Highway 20. However, plaintiff and his wife testify there was no sign nor other warning at this point or elsewhere along the new road. It conclusively appears there was no sign, warning or barricade along the new grade north of U. S. 20.

Down to 1951 plaintiff had lived on the farm his brother later occupied and was familiar with the old road but he had never seen the new road before nor had he been in this vicinity since the construction work commenced. He did, however, know some change in the old road was planned.

In considering the errors assigned we will make further reference to the facts.

I. There is no merit to defendant's contention plaintiff was contributorily negligent as a matter of law. Defendant argues plaintiff was negligent in maintaining a lookout because he did not sooner discover there were no planks in place where the new road crossed the track and that the crossing and the new road north of it were not finished. It is also argued plaintiff was driving at such speed he was unable to stop within the assured clear distance ahead.

There is a good deal of evidence plaintiff was in the exercise of ordinary care as he approached what he believed was a railroad crossing on this new road. He was driving 15 to 20 miles an hour until he tried to stop just before his car slid onto the track. He and his wife were watching the road and, as was his duty, he looked to the left and right, upon approaching the track, to see if a train was coming. It cannot be said as a matter of law he was negligent in not seeing the turn-off onto the old road of which he had no knowledge. Other witnesses, including an employee of defendant, who visited the scene that night also

failed to see it. The new road appeared to continue on across defendant's track. Plaintiff and his wife thought it did. The night was dark and rainy.

Of course the issue of freedom from contributory negligence is ordinarily one of fact for the jury. Mueller v. Roben, 248 Iowa 699, 702, 82 N.W.2d 98, 100, 101, and citations; Aitchison v. Reter, supra, 245 Iowa 1005, 1007, 64 N.W.2d 923, 924; Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 82, and citations. We are cited to no precedent on facts at all comparable to those here which holds there was contributory negligence as a matter of law.

These decisions support our conclusion the issue of freedom from contributory negligence was for the jury: Louisville & N. R. Co. v. Anderson, 5 Cir., 39 F.2d 403, 405; Black v. Southern Pacific Co., 124 Cal. App. 321, 12 P.2d 981, 985; Mercier v. Naugatuck Fuel Co., 139 Conn. 521, 95 A.2d 263, 265; City of Fort Worth v. Lee, Tex. Civ. App., 182 S.W.2d 831, 838, 839; Id., 143 Tex. 551, 186 S.W.2d 954, 959, 159 A. L. R. 125, 132, 133.

II. Defendant's second contention is it was entitled to a directed verdict because it says it owed plaintiff no duty to erect barricades or warning signs near the alleged crossing. As stated, principal argument in support of this contention is that plaintiff was a trespasser upon its track and it therefore owed him no duty except to exercise ordinary care to avoid injury to his car after discovering it. As plaintiff concedes, if he was a trespasser upon the track, defendant owed him no duty to erect barriers or warning signs for his protection. Plaintiff maintains, however, he went upon the track by implied invitation of defendant.

Generally a motorist who enters upon a railroad right of way at a place other than a public crossing is regarded as a trespasser to whom the railroad owes no duty of due care prior to discovering his presence upon the right of way. Annotation, 44 A. L. R.2d 680, 682. But under the circumstances here we think defendant was not entitled to a directed verdict on the ground plaintiff was a trespasser upon defendant's right of way.

The new crossing where plaintiff's automobile was struck and the grade leading thereto appeared to be, and plaintiff believed they were, part of a public highway. The jury could

properly find plaintiff's belief was reasonable and that defendant knew or should have known travelers would reasonably believe the crossing was a public one. Under such circumstances plaintiff was not a mere trespasser upon defendant's right of way but was there by implied invitation.

Although stated in terms of liability for bodily harm rather than injury to an automobile, the rule that has proper application here is section 367, Restatement, Torts: "Dangerous Conditions upon Land Appearing to Be a Highway. A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."

A like thought is thus expressed in the annotation in 174 A. L. R. 471, 476: "Appearance as part of public way. If an owner maintains some part of his land adjacent to a public way in such condition as to have the appearance of being part of the way * * * he gives implied invitation to members of the public to use it as such. If one of these is injured by reason of a negligent condition therein it is not a defense against him that he is a trespasser."

Much the same view is stated in 74 C. J. S., Railroads, section 718a, page 1318: "A railroad which constructs a private driveway in such fashion as might reasonably mislead a traveler into a belief that it is but a continuation of the public street is obliged to use reasonable and ordinary care in keeping the premises and approaches safe."

We are aware, as defendant repeatedly reminds us, actual construction of the new grade here was by the county with defendant's consent, not by defendant. We are clear this does not relieve it from liability. The same section of C. J. S. says at page 1317: "The railroad company is not relieved of liability * * * because the construction or repair * * * was performed by, or on the authority of, state or municipal authorities."

44 Am. Jur., Railroads, section 508, states: "The weight of authority, as well as apparently the better reasoning, [is] that where a road which crosses a railroad is apparently open to the public, and is used by it, with the assent or acquiescence

of the railroad company, it is its duty to exercise care for the benefit of travelers on the highway when approaching such crossing * * *."

Mann v. Des Moines Ry. Co., 232 Iowa 1049, 1056-7, 7 N.W.2d 45, 50, 51, considers at length the distinction between a trespasser or bare licensee and a licensee by implied invitation. Under the views there expressed this plaintiff did not occupy the status of trespasser as a matter of law but was a licensee by implied invitation to whom defendant owed the affirmative duty of due care. The Mann opinion holds this is a clear and correct definition:

" '* * * A licensee by implied invitation is one who has been invited to enter upon the land either by the owner or occupier of the same by some affirmative act done by such owner or occupant, *or by appearances which justify persons generally in believing that such owner or occupant had given his consent to the public generally to enter upon or to cross over his premises,* and while such licensee is acting within the scope and limit of such implied invitation he has the lawful right to be where he is so invited.'

"* * * A licensee by invitation, either express or implied, is, of course, never a trespasser." (Emphasis added.)

. Decisions which at least by analogy support the conclusion plaintiff was impliedly invited to use the apparent crossing include: Mercier v. Naugatuck Fuel Co., supra, 139 Conn. 521, 95 A.2d 263, 265; Williamson v. Southern Ry. Co., 42 Ga. App. 9, 10, 155 S.E. 113; Tomle v. Hampton, 129 Ill. 379, 21 N.E. 800, 801; Beckwith v. Somerset Theatres, 139 Maine 65, 27 A.2d 596, 598; Holmes v. Drew, 151 Mass. 578, 25 N.E. 22, 23; Sears v. Merrick, 175 Mass. 25, 55 N.E. 476; Zetley v. Jame Realty Co., 185 Wis. 205, 201 N.W. 252, 254.

This from Williamson v. Southern Ry. Co., supra, is applicable here: "* * * the physical surroundings and circumstances were such that a jury would be authorized to find that a stranger passing along the street on a rainy night might, while in the exercise of ordinary care, believe that such privately owned roadway or driveway was but a continuation of the public street, and thus be reasonably misled into driving thereupon in an effort

to cross the railroad. * * * Under the facts and circumstances set forth in the petition * * * there was what amounted to an implied invitation on the part of the defendant to enter upon its premises; and * * * it was incumbent upon the defendant to use reasonable and ordinary care in keeping the premises and approaches safe."

In a case involving an injury at a crossing by a railroad of a private way it has been held "the test was whether an ordinarily intelligent and prudent man would understand that there was an invitation to use the crossing as a public way." Chenery v. Fitchburg R. Co. (Holmes, J.), 160 Mass. 211, 213, 35 N.E. 554, 555, 22 L. R. A. 575. This test was approved in Leighton v. Dean, 117 Maine 40, 102 A. 565, 566, L. R. A. 1918B 922.

It is true what appeared under the circumstances on the night in question to be a public crossing had existed only for a short time. But there is substantial evidence defendant's employees closely watched the progress of the construction work, knew of the delay in delivering the culvert and made at least daily inspections of the track and crossings. The finding is warranted that defendant for at least a brief period so maintained this apparent crossing that it knew or should have known travelers would reasonably believe it to be part of the public way. Under the authorities heretofore cited this imposed upon defendant the duty to exercise reasonable care toward plaintiff. And this is true although the construction work was done by the county with defendant's knowledge and consent rather than by defendant. As bearing on this see Leonard v. Mel Foster Co., Inc., 244 Iowa 1319, 1325, 60 N.W.2d 532, 536, and citations.

We have considered every authority cited in defendant's able brief. We think our conclusion does not conflict with any of them. Some of the decisions deny recovery because of insufficient proof the crossing in question was unsafe. In Thomas v. Chicago, M. & St. P. R. Co., 93 Iowa 248, 61 N.W. 967, a child was injured while trespassing upon the railroad's bridge. In Printy v. Reimbold, 200 Iowa 541, 202 N.W. 122, 205 N.W. 211, 41 A. L. R. 1423, the driver of the automobile was lost and went onto a private way without knowing where he was.

Defendant appears to place most reliance upon Black v. Southern Pacific Co., supra, 124 Cal. App. 321, 12 P.2d 981.

There a city had widened a street leading up to a railroad track but the crossing had not been widened and plaintiff collided with the base of a wigwag signal on the opposite side of the track. Recovery was denied partly because a statute provided that the railroad commission had exclusive jurisdiction over the crossing and the location, maintenance and use of warning devices thereon. They could not be changed without the commission's authority and it had not been sought or granted.

Defendant argues it would have violated section 321.259, Code, 1954, if it had erected a barricade or warning sign near the apparent crossing. The statute is too long to set out here in full. It provides in substance that no person shall maintain upon any highway any unauthorized sign which purports to be an official sign, traffic-control device or railroad sign or which attempts to direct traffic. "This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information of a type that cannot be mistaken for official signs."

If this statute has any application here it seems clear defendant could have erected a barricade or warning sign near this apparent crossing without violating the section. The crossing on the night in question was not in fact a public one. It only appeared to be. Defendant could certainly have erected a barricade or sign to direct traffic toward the old established crossing until the construction work was completed.

III. Defendant contends there is no evidence to support submission to the jury of the question of defendant's negligence in operating its train, in regard to lookout, speed and control. The argument that defendant owed plaintiff no duty to exercise care in these respects, on the ground he was a trespasser, is disposed of by Division II hereof.

If plaintiff was impliedly invited to use this apparent crossing, defendant was under the duty to exercise reasonable care under the circumstances in keeping a lookout and also in the speed and control of its train. 74 C. J. S., Railroads, sections 738d, 739, pages 1383–85; Id., sections 744, 751b; 75 C. J. S., Railroads, section 905; 44 Am. Jur., Railroads, sections 459, 460, 456. As to the duty of lookout see Grace v. Minneapolis & St.

Louis R. Co., 153 Iowa 418, 425, 133 N.W. 672, and citations; Monson v. Chicago, R. I. & P. Ry. Co., 181 Iowa 1354, 1375-6, 159 N.W. 679, 165 N.W. 305, and citations.

We have held several times no speed of a train is in and of itself negligence except where contrary to statute or ordinance but any speed may constitute negligence if, under the circumstances, reasonable prudence calls for a lesser speed. Jensvold v. Chicago G. W. R. Co., 234 Iowa 627, 631, 12 N.W.2d 293, 296, and citations. See also Sterlane v. Fleming, 236 Iowa 480, 486-8, 18 N.W.2d 159, 163, 164, and citations; Annotation, 154 A. L. R. 212; 44 Am. Jur., Railroads, sections 511, 512; 74 C. J. S., Railroads, section 745.

On the question of lookout the engineer of the train testifies, in substance, he saw nothing on the crossing until he was 500 to 600 feet away, he then saw a red light, he did not know what it was nor whether it was moving, when he saw it was not moving he applied the emergency brakes and the front of the engine traveled 500 to 600 feet after it hit the automobile. The lights on plaintiff's car were burning. The headlights pointed in a northeasterly direction and the taillights to the southwest, between the rails. The headlights "lit up the ground." The track was straight, upgrade and there were no obstructions to vision along it for 1.8 miles toward the crossing from Dyersville.

We think the finding is warranted the engineer could, in the exercise of reasonable care, have seen plaintiff's lighted automobile stalled on the track considerably sooner than he testifies he saw it. The engine was equipped with two headlights, one stationary, the other movable.

We conclude also it was proper to submit to the jury the alleged excessive speed of the train, along with other facts and circumstances, in determining whether defendant exercised due care. Defendant's engineer testifies the speed limit for freight trains (evidently fixed by the company) is 45 miles per hour, the train was going about that speed through Dyersville, the grade then slowed it down "a little bit" but it was "about 40 anyhow where we hit the car." There is evidence the trainmen told plaintiff right after the collision the train was "hot"—meaning it was making as fast time as possible. As we have indicated,

the finding is warranted that this apparent crossing was an unusually dangerous place on the night of September 16.

 The claim of negligence in the matter of control of the train is closely related to the question of speed. Martin v. Momyer, 230 Iowa 1158, 1166–7, 300 N.W. 310, 315, says that more often than otherwise control refers to speed. In fact we have said, in a case where a pedestrian was struck by a motorist, it is difficult to wholly separate his duty to maintain a lookout from the necessary acts to control the vehicle and the speed at which it is driven—there is some necessary relation between them. Altfilisch v. Wessel, 208 Iowa 361, 367, 225 N.W. 862. We have frequently held a motor vehicle is under control when it is moving at such speed and the operator has the mechanism and power under such control it can be brought to a stop with a reasonable degree of celerity. Arenson v. Butterworth, 243 Iowa 880, 887, 54 N.W.2d 557, 561, and citations. We have also pointed out repeatedly the question of control of a motor vehicle largely depends upon the surrounding circumstances and is ordinarily for the jury. Ibid. and citations.

It would seem these precedents have application here although the train was not a motor vehicle. We think the evidence warranted submission of the question of control in operating the train. Mann v. Des Moines Ry. Co., supra, 232 Iowa 1049, 1071, 7 N.W.2d 45, 57, holds it was there proper to submit the issues of excessive speed and lack of control in the operation of a streetcar. The evidence on those matters here seems as strong as in that case.

 IV. Defendant contends the questions of lookout and speed should not have been submitted to the jury on the ground neither could have been the proximate cause of the collision. This contention appears to have been first raised in defendant's motion for judgment notwithstanding the verdict or for new trial. It was not urged in the exceptions to instructions or otherwise during the trial. Defendant is therefore not entitled to have this complaint considered here. Rule 196, Rules of Civil Procedure; Mongar v. Barnard, 248 Iowa 899, 911, 82 N.W.2d 765, 773, and citations.

However, we are unable to agree with the contention. Of course it is not necessary that either lookout or speed was the

sole cause of the collision. It is sufficient if it was a concurring cause. Annotation, 154 A. L. R. 212, 250, 251. The question whether excessive speed of a train was a proximate cause of the injury is generally for the jury's determination. Id., page 257. It cannot be said as a matter of law this collision would have occurred if reasonable care under the circumstances had been used in maintaining a lookout or in the speed of the train. The finding is warranted the collision could have been avoided by the exercise of such care in either respect. Jensvold v. Chicago G. W. R. Co., supra, 234 Iowa 627, 632, 12 N.W.2d 293, 296, and citations, and Chesapeake & O. Ry. Co. v. Boren, 202 Ky. 348, 259 S.W. 711, support our conclusion as to the issue of speed.

 The cost of printing plaintiff's brief was $3 per page. Defendant's printing cost $1 per page and it complies with our rules. Cost of printing will be taxed as costs to the losing party only if reasonable. Rule 345, Rules of Civil Procedure. We regard $3 a page as unreasonable and direct that only half the cost of printing plaintiff's brief be taxed to defendant.—Affirmed.

All JUSTICES concur.