# CASES DETERMINED

# January Term, 1903.

McGARRY, Respondent, vs. RUNKEL and others, Appellants.

*April 21—May 8, 1903.*

(1) *Appeal: Review of findings.* (2-4) *Highways: Conflicting surveys: Statutory width: Presumptions: Evidence: Location of fences.*

1. A finding of fact by the trial court upon conflicting evidence will not be disturbed on appeal, unless so opposed to the clear preponderance of the evidence as to lead to the conviction that the court erred in applying rules of law or failed to give proper consideration to the evidence.
2. Evidence as to the methods followed by different surveyors in locating the lines of a highway, and as to the physical facts confirmatory of one or the other of such surveys, is *held* to sustain the finding of the trial court that the line as run by one of such surveyors corresponded with the original survey.
3. Sec. 5, p. 33, Terr. Laws of 1840, raises a conclusive presumption that a highway laid out thereunder was four rods in width, unless it was otherwise described in the return of the commissioners.
4. The evidence in this case,—showing among other things that the present fences along an old highway are at varying distances between three and four rods apart, the average distance being nearer three rods than four, but that they are nearer together than the ancient fences,—is *held* to disprove, rather than to prove, that the highway, as laid out under the act of 1840, was but three rods wide.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Modified and affirmed.*

Plaintiff being the owner of a tract of land nine or ten rods in width, bounded northerly on a highway running in a north-westerly and southeasterly direction, in June, 1901, built a fence on what he claimed to be the boundary line between his premises and such highway. That line was adopted in compliance with a survey made by one McKesson, hereinafter called the "McKesson survey," and on the theory that the highway was three rods in width, the fence being about a foot more than one and one-half rods from the center line of said survey. That highway is the same considered in *Randall v. Rovelstad,* 105 Wis. 410, 81 N. W. 819, and plaintiff's premises are next west of those of Rovelstad, considered in that case. The highway was laid out by county commissioners in April, 1840; their report containing no specification of its width, but merely of the line pursued. A survey by one Powrie was also made, and presented upon the trial, which located the center line of the road opposite plaintiff's premises some two rods south of the McKesson. Considerable evidence was given of the method of making both surveys and of the supposed finding of original monuments and other indications of the location of the original traveled highway. Plaintiff's fence was a wire web, extending across the whole width of his premises, parallel to the course of the road, and with fences in extension of the east and west sides thereof. It effectually obstructed the traveled part of the road, which, owing to topography, was crowded southward at this particular point. The town officers, under claim of such obstruction, removed all of the fence back to a point about two rods and a half south of the center line according to McKesson's survey, but not beyond the limits of the highway according to the Powrie survey. The court held the McKesson survey correct, and the highway three rods wide, and, as a result, that all acts of the defendants were upon plaintiff's premises, and that he was thereby damaged $25, for which judgment was rendered, accompanied by a permanent injunction against threatened

repetitions of the same trespass; from which judgment the defendants appeal.

For the appellants there was a brief by *Rietbrock & Rietbrock,* attorneys, and *Joshua Stark,* of counsel, and oral argument by *Mr. Stark* and *Mr. A. C. Rietbrock.*

For the respondent there was a brief by *Murphy & Kroncke,* and oral argument by *George Kroncke.*

DODGE, J.   There are but two questions in this case, and they both questions of fact. They are, first, whether the trial court's finding that the McKesson survey was correct is sustained by the evidence; and, secondly, whether the finding that the road in question was laid out a three-rod road is so sustained.

The first question involves a very large amount of conflicting evidence, primarily that of two surveyors as to the relative accuracy with which they measured angles and distances in running the survey, and with reference to the various confirmatory signs discovered upon the ground, consisting of fences, indications of ancient travel, topographical conditions likely to have been considered in selecting the original highway, and specific monuments mentioned in the original survey.   Of course, upon such conflict the finding of the court must stand, unless it is so opposed to the great and clear preponderance of the evidence as to lead us to the conviction that the court must have erred in applying rules of law, or through mistake or other reason failed to give proper consideration to the evidence.   As to the accuracy of the methods of survey followed by the respective surveyors, we certainly are not able to say that either so overwhelmingly preponderates over the other; and when we pass to the physical facts as confirmatory of the one or the other we find some of them strongly supporting the McKesson survey.   Immediately at the point in dispute the fences, especially on the south side of the road, and the line of travel, have been so various and indiscriminate

that they are of little significance as indicating the true line
of original survey. Many of the reasons therefor were set
forth in the statement of facts in *Randall v. Rovelstad,* 105
Wis. 410, 81 N. W. 819. But at other places, somewhat re-
mote, the highway has been much more persistently main-
tained, and especially at a point nearly a half a mile east of
the place of dispute, where commences a long straight course
eastward of eighty-five chains. At this point the McKesson
survey corresponded substantially with the middle of the road
as traveled and fenced since very early days, while the Powrie
survey was nearly two rods further south. Again, at a point
approximately one fourth of a mile southeast of plaintiff's
premises, the original survey runs to a bridge as a monument.
The Powrie survey strikes a bridge over the watercourse at
that point now in use, but there was testimony which, if be-
lieved by the court, established that the bridge over that water-
course existing prior to 1851 was elsewhere, and further to
the northward, and that the bridge struck by Powrie was not
built until subsequent to 1857. McKesson, and another sur-
veyor, who followed his line, found clear indication of the
ancient bridge across this watercourse, corresponding with
the line as run by them. This fact is very cogent, for the
bridge is the first monument mentioned in the original survey
running easterly from the quarter-section line to the west of
plaintiff's premises. Again, the judgment in the action of the
town of *Wheatland v. McGarry,* the present plaintiff, de-
cided in connection with *Randall v. Rovelstad,* certainly es-
tablished that, as between the plaintiff and the town, with
whom defendants are in privity as its officers, the plaintiff's
buildings were not within the lines of the highway, but con-
fessedly they would impinge on the highway if Powrie's lines
were correct. There is, therefore, this piece of conclusive evi-
dence by *res adjudicata* that the Powrie survey is wrong, al-
though it may not tend to establish that the McKesson survey
is correct. As a result, however, of all the evidence, of which

only a few items have been mentioned, we conclude that there was support for the finding that the line as run by McKesson corresponded with the survey as originally made in 1840.

As to the second question, namely, the width of the highway as originally laid out by the county commissioners of Racine county, we are first confronted with a statute—sec. 5, No. 24, p. 33, Terr. Laws of 1840—in force at the time that the highway in question was surveyed. That statute provides:

"The established width of all territorial, town, and county roads shall be sixty-six feet, and the line, run by surveyors, shall be the center of the road, unless otherwise described in the return."

Conceding that it would have been within the power of the county commissioners to have laid this road only three rods wide, this statute raises a conclusive presumption to the contrary, unless the return of the commissioners showed that fact. That entire return, as stated in the *Rovelstad Case,* is not accessible—merely the survey; and it is not impossible that extrinsic evidence might suffice to establish that it did provide for a three-rod road. The only evidence offered, however, is location of the fences, and some attempt to prove reputation. The evidence as to location of fences is that at the present time they vary from seventy-eight links to ninety-three links apart, there being no very marked persistency to either width, although it is stated that the average is nearer three rods than four. It is, however, made apparent—as, indeed, common knowledge would suggest—that the present fences are nearer together than the ancient ones; that is, as old fences have worn out, or for other reasons been changed, the new ones have been crowded further into the highway, and there is an intimation that at certain places, about ten years ago, certain farmers moved fences from approximately the four-rod line to approximately the three-rod line, in pursuance of a contention that the road was only three rods, although at that time

the highway officers insisted that it was four rods wide.  As to this class of evidence, it seems to us that it cannot be allowed to overcome the very cogent effect of the statute above quoted.  Indeed, we think the location of the fences has very little, if any, tendency to prove a highway of three rods in width.  Throughout almost the entire course those fences were built further apart than three rods, and, while they are less than four rods, yet the known custom and tendency of farmers to crowd their fences toward the street instead of away from it gives to mere irregular encroachments little or no evidentiary effect, while the fact that throughout a large part of the line the fences are built on a basis of more than three-rod width, is well-nigh conclusive that the legal lines were not closer together.  If, indeed, the fences had been persistently close to the three-rod line, with aberrations preponderantly toward encroachment thereon, the fact might be a significant one; but when they are persistently outside of that line, we think, instead of tending to prove a legal width of three rods, they quite conclusively disprove it.

The attempt to prove reputation quite completely failed. Substantially every witness whose memory reached back prior to a period of dispute—about 1890—frankly declared that there was no general reputation; that the road was claimed to be four rods as frequently and as vehemently as it was claimed to be only three rods in width.  We are therefore constrained to the view that the trial court erred in this finding of fact.  Either he failed to give to the statute of 1840 its full force, or he must have misapplied the evidentiary effect of the fences which encroached beyond the four-rod line without reaching the three-rod line.  We are satisfied that the evidence is not sufficient to defeat the effect of the statute, and that we must presume, in deference thereto, that this highway was legally laid out at a width of four rods.

The result of the conclusions above reached is that the fence in front of plaintiff's premises, parallel to the course of the

road, extended into the public highway about eight feet, and, as it worked an almost complete obstruction of the traveled portion of the highway, the defendants, town officers, were guilty of no trespass in peaceably, though forcibly, removing the same; but, as they did not content themselves with removing those portions of the fence which were within the highway, but extended the demolition of the two north and south fences at each end of this lateral fence back to a point about one and a half rods—that is to say, at least one rod beyond the limits of a four-rod road upon the McKesson survey,—they thereby did trespass upon plaintiff's premises to that extent. Hence the plaintiff is entitled to recover damages, but in an amount reduced somewhat, relatively to the extent of the trespass found by the court, as compared with that now found to have been committed. We think a change of damages from $25 to $10 will accomplish that result.

That portion of the judgment, also, which enjoins the defendants from molesting or interfering with any structures of the plaintiff allowing only for a public easement of a three-rod road along the line of the McKesson survey is erroneous to the extent of one half rod. Such injunction must be limited so as to allow for a public easement of four rods, instead of three rods.

*By the Court.*—The judgment appealed from is modified by deducting $15 from the amount of damages awarded thereby, and by limiting the injunction to interference with fences, buildings, or other structures of the plaintiff upon the premises in the judgment described, allowing for a public easement of a four-rod road along the northern boundary thereof. As so modified, the judgment is affirmed. Appellants will recover costs in this court.