[L. A. No. 3027. In Bank.—March 25, 1914.]

# HORACE S. FOUTZ, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

MUNICIPAL CORPORATION—LIABILITY FOR INJURIES TO WORKMAN—NEGLIGENCE OF FOREMAN.—In this action for damages against a municipal corporation by a workman who was a member of a gang of men operating a dredger in the construction of an aqueduct for the city and who was injured while assisting in raising the "digger-head" of the dredger, which had broken off and fallen into the water, the evidence is sufficient to sustain a finding that the injury was occasioned by the negligence of a superior employee in charge of the dredger and directing its movements, and that the injured employee was not guilty of contributory negligence.

ID.—EMPLOYER'S LIABILITY — CHANGE OF FELLOW-SERVANT RULE BY STATUTE.—The municipal corporation was liable to the injured employee, under the amendment of 1907 to section 1970 of the Civil Code, providing that an employer shall be liable for an injury to an employee "when the same results from a wrongful act, neglect or default of any agent or officer of such employer, superior to the employee injured, or by a person employed by such employer having the right to control or direct the services of such employee injured."

ID.—NEGLIGENCE OF FOREMAN — CONSTRUCTION OF CODE.—The proviso quoted makes the master liable for the neglect of a foreman or other person in charge and control of other men that work with him, for damages caused by his negligence in the performance of his superior duties, even if they are not duties which the master, by law, owes to the inferior servant.

ID.—AUTHORITY FROM CITY FOR DOING WORK—MANNER OF PROVING.—It was not necessary in such action for the plaintiff to show an ordinance or resolution of the council or other express authority giving the foreman directions to carry on the work and control the men; it being admitted that the city was engaged in building the aqueduct, and it appearing that the place where the accident happened was a part thereof being constructed by the city, through its officers and agents duly authorized, by means of the dredger operated by the men in question.

ID.—CONTROL OF DREDGER—INSTRUCTION REGARDING.—A requested instruction in such action to the effect that the defendant was not liable for the negligence of the person in charge of raising the "digger-head," unless it was shown that the negligence complained of occurred, not only while such person had the right to control or direct the services of the plaintiff, but also that it "occurred in

the exercise of such control or direction," was modified by striking out the clause quoted. In view of the undisputed evidence that he *was* exercising such control at the time, the modification was harmless.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

John W. Shenk, City Attorney, Leslie R. Hewitt, and W. B. Mathews, for Appellant.

Carleton R. Bainbridge, Frank F. Pratt, and Munson T. Case, for Respondent.

SHAW, J.—The plaintiff recovered a judgment against the defendant in an action for damages from personal injuries. The defendant appeals therefrom and also from an order denying a new trial.

The defendant was constructing an aqueduct to bring water from Inyo County to Los Angeles for the use of its inhabitants. It was excavating the canal by means of a suction dredger driven by electric power, operated by four men, all of whom worked under the general direction of a camp foreman named Carter. The mechanical operations of the dredger were under the control of one Berry. While operating the machinery in the regular fashion he stood on a small platform in the front part of the dredger and worked the various parts of the machinery, as required, by means of several movable levers placed at hand for that purpose. He was known as lever-man. Two other men, known as bank-men, worked on the canal bank adjusting its slope as the dredger proceeded and also helping to move the dredger as the work progressed. Foutz, the plaintiff, was employed as an oiler. His primary duty was to keep oil supplied to the machinery on the dredger. Berry was in the immediate control of the movements of the men as they worked. Ordinarily, however, each knew the work he was to do and proceeded to do it, no orders being necessary. If anything unusual occurred in Carter's absence, Berry had authority to take control and direct the other men

as to what they should do.   At the time of the accident which caused the injury complained of, a part of the dredger called the "digger-head" had broken off and fallen into the water in the canal.   It was made of metal and was some four feet long, weighing three hundred pounds.   These digger-heads were revolved under the water to loosen the earth so that it could be taken up into the suction pipes.   There were two of them, one on each side of an apparatus called a "ladder" extending almost horizontally in front of the dredger into the water and hinged to the dredger so that the forward end could be raised or lowered to keep the digger-heads working in the earth to be excavated.   When the digger-head broke, Carter was absent and Berry took charge of the operations to raise it from the water and put it upon the bank at one side. He undertook to do this by attaching it to the ladder and then by lifting the ladder and turning it to one side, carrying the digger-head to the bank, using the machinery on the dredger for that purpose.   He directed the other men to assist him in this work which they immediately proceeded to do. There were two cables attached to the ladder, one of which was used to raise and the other to lower it.   At the time of the accident Foutz was standing on the ladder with a scantling in one hand which he intended to press against the rope fastened to the digger-head in order to hold the rope away from the sharp corner of the ladder frame to prevent the cutting of the rope when the digger-head was lifted.   He had been given to understand that the ladder was to be raised.   To steady himself in the position he took he placed the other hand upon the cable used to lower the ladder which cable, as he supposed, would not be operated.   While he was getting himself in this position, Berry had gone back to the lever platform saying that he would "try it," which Foutz understood to mean that he would proceed to raise the ladder and thereby lift the digger-head.   When Berry reached the platform Foutz was immediately in front of him in plain sight.   In this situation Berry pulled the lever which lowered the ladder, instead of that which raised it, and thereby caused Foutz' hand, which was resting on the lowering cable, to be carried with it into a pulley thereby causing the injury.

It is unnecessary to state further details.   There was sufficient evidence to sustain a finding that the injury was

caused by the negligence of Berry in moving the cable to which plaintiff was holding to steady himself, without warning the plaintiff of his intention, and to sustain a finding that plaintiff was not guilty of contributory negligence in placing his hand upon that cable. The main contention of the defendant is that the negligence of Berry, which caused the injury, was that of a fellow-servant of plaintiff, for which the defendant is not liable.

Under the rule declared by section 1970 of the Civil Code, prior to its amendment in 1907, [Stats. 1907, p. 119], Berry and the plaintiff would have been classed as fellow-servants. That section then declared that an employer was not bound to indemnify an employee for injuries from the negligence of "another person employed by the same employer in the same general business," if he had used ordinary care in selecting the culpable employee. Under this definition, it was settled law that a foreman or engineer is a fellow-servant with the workmen engaged with him and under his immediate direction, control, and supervision in carrying on a part of the master's work. (*Trewatha* v. *Buchanan Gold Min. Co.,* 96 Cal. 498, [28 Pac. 571, 31 Pac. 561]; *Donovan* v. *Ferris,* 128 Cal. 53, [79 Am. St. Rep. 25, 60 Pac. 519]; *Stevens* v. *San Francisco etc. Co.,* 100 Cal. 566, [35 Pac. 165]; *Daves* v. *Southern Pac. Co.,* 98 Cal. 19, [35 Am. St. Rep. 133, 32 Pac. 708]; *Fagundes* v. *Central Pac. R. Co.,* 79 Cal. 97, [3 L. R. A. 824, 21 Pac. 437].)

In 1907, this section was amended by adding thereto, among other things, the following: "Provided, nevertheless, that the employer shall be liable for such injury when the same results from a wrongful act, neglect or default of any agent or officer of such employer, superior to the employee injured, *or by a person employed by such employer having the right to control or direct the services of such employee injured.*" We have italicized the portion of the section as amended which applies particularly to this case. This provision was intended to change the former definition of fellow-servants and to limit that definition to a much smaller class. There can be no doubt that it has that effect. A foreman in charge of others engaged in the same work with him, or an engineer in charge of the operation of the machinery with assistants immediately under him, usually has authority from the master, either

expressed or implied, to order and direct the movements of the men engaged with him. Yet, under the statute as it previously stood, he was only a fellow-servant with them and for his neglect in the performance of his superior duties, to which they were required to conform, the master was not liable, unless the neglect was in some duty which the master himself, by law, owed to the inferior servant. (*Wall* v. *Marshutz*, 138 Cal. 522, [71 Pac. 692].) The proviso quoted makes the master liable for the neglect of a foreman or other person in charge and control of other men that work with him, for damages caused by his negligence in the performance of his superior duties, even if they are not duties which the master, by law, owes to the inferior servant. The lever-man, at the time of the accident, was in control of the movements of the men who were assisting him in recovering the digger-head. This was not a part of the regular work of operating the dredger in which they would be presumed to know their duty and would be expected to perform the same without order or direction from any one. It was an unusual operation, arising upon an emergency, and was conducted wholly under the direction and at the instance of the lever-man who was in control. He was operating the machinery of the dredger for that purpose and they had taken positions which gave them no reasonable opportunity to avoid the danger from his negligent act. It matters not that he did not expressly, or by words, command the plaintiff to stand as he did and endeavor to hold the rope away from the sharp edge of the ladder frame with his hand on the other cable. Plaintiff in the performance of his duty and without express orders did that which he saw was appropriate to be done to facilitate the work in which he was ordered to assist. He was under Berry's immediate control and subject to his orders, whether he gave directions for each act or not. Berry was in a position to see and either did see, or by ordinary care would have seen the position which plaintiff had taken, and his silence after such observation was equivalent to an approval of that position and to an order that the plaintiff should do that which he was then doing, so far as the operation then in hand was concerned, and Berry was in actual control of the position of the plaintiff and of the machinery to be operated. His choice of levers was not a part of the work of the same char-

acter as that of the other men, but was a part of the work pertaining to his superior power and functions. The case therefore falls directly within the proviso above quoted which · makes the defendant liable for his negligence.

It was not necessary for the plaintiff to show an ordinance or resolution of the council or other express authority giving Berry or Carter directions to carry on this work and control the men. It was admitted that the city was engaged in building the aqueduct and it appeared that this was a part thereof and that it was being constructed by the city, through its officers and agents duly authorized, by means of this dredger operated in this manner by these men. The authority was sufficiently proven.

Complaint is made of a ruling upon instructions to the jury. The defendant asked an instruction to the effect that it was not liable for the negligence of Berry, unless it was shown that the negligence complained of occurred, not only while Berry had the *right* to control or direct the services of plaintiff, but also that it "occurred in the *exercise* of such control or direction." The court struck out the clause quoted and instructed the jury merely that the defendant was not liable unless it was shown that the negligence complained of occurred while Berry had the right to control and direct the services of plaintiff. The court did not elsewhere instruct the jury that the defendant would not be liable unless Berry's negligence occurred in the exercise of his right to control or direct the services of the plaintiff. We can conceive of cases where such an instruction should be given. For example, if a foreman in charge of men shoveling dirt out of a trench, should himself take a shovel and work in the trench with the men, and in so doing should carelessly strike one of the men with his shovel, it may be that while thus using the shovel he would be a mere fellow-servant with them and that the master would not be liable for the injury caused by the blow. If the evidence left it doubtful whether the negligent act was done by the foreman while working in common with the men or while performing some superior duty pertaining to his foremanship, the question whether or not such an instruction was proper would arise. But here there is no conflict in the evidence with respect to the character of the work Berry was doing, as compared to that of the plaintiff,

or concerning their respective functions and relations at the very time of the accident. Berry was in control, both physically and legally, and it was his act in exercising that control that caused the injury. The jury could not have found otherwise. The failure to give the instruction as asked, therefore, did not prejudice the defendant, even if we assume it to be correct in point of law in a case to which it would apply.

This cause was decided by the district court of appeal and the decision of that court was vacated upon a petition for rehearing, because of its statements in regard to the point last mentioned. The following part of the opinion of that court upon another point was not objected to upon the rehearing and we think it correctly states the law on the subject to which it relates:

"There was submitted to the jury certain special interrogatories, first: 'Did the employee Berry, by his words or acts or both, immediately prior to the accident in which plaintiff was injured, give the plaintiff reasonable grounds for believing that he, the said Berry, would not lower the ladder frame of the dredger mentioned in the complaint?' This question was answered by the jury in the negative. It is claimed by appellant that such answer is inconsistent with the general verdict, and under section 625 of the Code of Civil Procedure said judgment should have been given for defendant. The interrogatory is peculiarly and adroitly worded, but it in terms restricts the time of notice to that immediately preceding the accident. The whole of the conversation with reference to the movement to be made of the cable to be employed, from which the inference might be drawn that the ladder lowering cable would not be disturbed, occurred a considerable time before the accident, and not immediately preceding it. The answer to the question as framed is not, therefore, inconsistent with the general verdict. The second special interrogatory was: 'Did the employee Berry, prior to the accident in which plaintiff was injured, inform the plaintiff that he was about to lower the ladder frame of the dredger mentioned in the complaint? Answer: No.' It is apparent that the jury believed their attention was called by the first interrogatory to the specific time immediately preceding the injury, and not to what occurred at a more remote period in the progress of the work."

The other points urged in the briefs are covered by what we have already said and it is unnecessary to further discuss them.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.