# Overton's Administratrix v. City of Louisville, et al.

(Decided May 31, 1927.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Railroads.—Petition alleging railroad's negligence in failing to maintain, either alone or jointly with city, a signal or obstruction to indicate no bridge crossed creek, where car of plaintiff's decedent was found and which creek was parallel to track and opposite street abutting track, held demurrable; the railroad being without right to obstruct street if it crossed track as a highway, and without duty to show street's termination if not a highway.

2. Municipal Corporations.—Negligence of city in failing to provide warning that street ended abruptly by running directly onto railroad tracks and into open creek would not render city liable for damages for death of one whose automobile was found in creek, unless negligence was proximate cause of injury.

3. Municipal Corporations.—Evidence that man unacquainted with street, finding it unlighted at night, drove off paved portions onto a rough dirt road and across railroad track 5½ inches above ground, where street ended abruptly at open creek, would not establish his contributory negligence, as matter of law, in action against city for his death.

4. Negligence.—Ordinarily, the question of contributory negligence is for the jury.

5. Municipal Corporations.—City's negligence in failing to maintain warning that street ended abruptly at railroad track and open creek could not be held proximate cause of death of one whose automobile was found in creek an hour after he was seen driving and whose body was found a mile distant, and the city was entitled to peremptory instruction; it being as reasonable to attribute injury to some undetermined cause as to the proved negligence.

6. Negligence.—"Proximate cause" of an accident is that which, in natural and continuous sequence, unbroken by any independent cause, produces the accident and without which the accident would not have occurred; proximity in time or space not being part of the definition.

7. Negligence.—Mere fact that some other cause operated with negligence of defendant will not relieve the defendant from liability for accident.

MORTON K. YONTS and J. W. FOWLER, JR., for appellant.

W. T. BASKETT and GROVER SALES for City of Louisville.

TRABUE, DOOLAN, HELM & HELM for Louisville & Nashville Railroad Company.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This action was instituted in the Jefferson circuit court by the administratrix of Burr M. Overton against the city of Louisville and the Louisville & Nashville Railroad Company, seeking to recover damages from the appellees for the death of her husband. The Louisville & Nashville Railroad Company filed a demurrer to the petition, which was sustained. The order sustaining the demurrer was entered on the 5th day of July, 1924. There is no further reference in the record to the railroad company until the 30th day of August, 1926, when an order was entered showing that appellant declined to plead further, and that the petition as against the railroad company was dismissed. The case was tried the second time in March, 1926, as to the city of Louisville, and the court gave an instruction directing the jury to find for the city.

The negligence alleged against the railroad company is that it owns a switch consisting of a single track running parallel with Bear Grass creek on the west bank thereof; which track crosses or abuts and meets Lampton street where said street abuts or meets the property line of the railroad company, and that at the point where the street abutted the property of the railroad company, or where the railroad company's track crossed the street, there was maintained or allowed to exist by the railroad company an open approach over its property from a point where said Lampton street abuts its property and ending abruptly and running into Bear Grass creek. It is alleged that it was the duty of the railroad company, either separately or in conjunction with the city, to have maintained a fence or blockade or some signal or safety device or warning at the end of Lampton street where it abutted the property of the railroad company, so that the traveling public might be warned that Bear Grass creek was on the other side of the railroad track. The railroad company maintained no signal, fence, or blockade to prevent travelers crossing its track at that point and driving into Bear Grass creek, so it is alleged in the petition. The sole negligence alleged against the railroad company was that it failed to take such steps as would protect a traveler from going onto and across its property, and thereby running into Bear Grass creek, which had been converted into a canal with concrete walls at that point. If Lamp-

ton street extended to and across the railroad track and beyond, it cannot be said that the railroad company was negligent in not blockading a public highway. If it ended when it reached the property of the railroad company, it was not incumbent on that company to warn the traveling public that the street ended at that particular point. We have not been favored by a discussion of the alleged negligence of the railroad company in the brief for appellant, and therefore we do not have the views of counsel on this point, but it seems to us that the petition did not state a cause of action against the railroad company and that the lower court was correct in sustaining the demurrer.

It is alleged in the petition that Lampton street is one of the public highways in the city of Louisville which had been constructed and maintained by the city as such for many years; that it was a frequented highway and much traveled by the general public; that Lampton street ended abruptly by running directly onto the tracks and property of the Louisville & Nashville Railroad Company and into Bear Grass creek. It is alleged that the city, either separately or in conjunction with the railroad company, should have maintained a fence or blockade or some signal or safety device at the end of Lampton street to warn travelers of the danger in crossing the railroad property and running into Bear Grass creek. It was further alleged that it was the duty of the city at this point to maintain a street light in good repair, but notwithstanding these duties on the city, as alleged, it was alleged that the city had failed and neglected to place or keep a fence or safety device or some warning signal of danger at said point, and that the city had failed to maintain its street light burning so that it would be possible to see the danger ahead. This condition had prevailed, so it is alleged, for a long time, and that the city knew of the alleged dangers and unsafe condition at the end of the street aforesaid. The death of appellant's intestate was caused by this alleged negligence, so it is claimed by appellant, on the 3d day of January, 1924, about 10 o'clock at night, while he was riding in a Ford coupe east on Lampton street and crossing over the point where Lampton street abuts or intersects the property of the railroad company and leads directly into Bear Grass creek; it is alleged that he was unaware of the dangerous and unsafe condition of the street, and that he could not have known of its condition by the exercise of ordinary care, and that

by reason of the negligence of the city he drove his car up to and over the end of said street across the railroad track, thereby causing himself and car to be precipitated into Bear Grass creek on the hard concrete incasement thereof and into the water of said creek, as the result of which fall he died. Damages in the sum of $54,000 are claimed for the death of appellant's instestate, and $250 for injury to his car. The city filed an answer traversing the allegations of the petition and pleading contributory negligence on the part of appellant's intestate.

In April, 1925, the case was tried and resulted in a verdict in favor of appellant for $4,000. A motion for a new trial was sustained and the verdict and judgment set aside. The case was tried again in March, 1926, and the parties agreed that the testimony offered on the former trial should be considered as the testimony on the last trial. The lower court on the motion of appellee, city, directed the jury to return a verdict for said appellee.

If the lower court was correct in giving a peremptory instruction in favor of the city on the second trial, it follows that it should have been given on the first trial, and we shall therefore determine the correctness of the ruling of the court in sustaining the motion of the city for a peremptory instruction in its behalf. This necessitates a consideration of the testimony offered by appellant on the trial.

It is established by the evidence that Lampton street is one of the public highways of the city of Louisville, between Logan street and Bear Grass creek; that appellant's intestate resided in the Highlands, which is east of Bear Grass creek in the city of Louisville; that his family was absent from home, and that during their absence he was accustomed to take his meals at the home of Mrs. Hair, who resided at Fifth and Chestnut streets; that he had the evening meal at the home of Mrs. Hair on the 3d day of January, 1924; and that he remained at her home until about 10 o'clock p. m., when he got in his automobile, and he was seen by Mrs. Hair driving south on Fifth street in the direction of Breckinridge street, and so far as the evidence discloses he was not seen again by any person while he was alive. Breckinridge street at the time was one of the popular thoroughfores leading from the business district and the heart of the city into the Highlands. It was a well-lighted highway and presented a safe and even course from the heart of the city of the residential district in the Highlands, some miles away.

There was a bridge over Bear Grass creek, on Breckinridge street, beginning at Logan street. At the time of the accident Breckinridge street was torn up for repairs between Logan street and Shelby street, and travel was blocked off of the street at this point. It is insisted by appellant, and in a measure supported by the facts and circumstances, that her intestate followed the customary avenue of travel to the Highlands by proceeding southward on Fifth street to Breckinridge and east on Breckinridge until he reached Shelby, when he discovered that Breckinridge street was there blockaded; that he turned north on Shelby street and proceeded to Lampton street, and that he then turned east on Lampton street and pursued his way until his automobile crossed the railroad track and dropped into Bear Grass creek. In going from Shelby street, he had to pass Logan street before he reached Bear Grass creek. It is shown by the evidence offered by appellant that two street lights located between Logan street and Bear Grass creek were not burning on the night of the accident, and it is further shown that across Bear Grass creek and the railroad tracks, on either side of the creek, there was an arc light burning, tending to show that Lampton street continued eastwardly after Bear Grass creek was crossed. An effort was made to show by the evidence that Lampton street was in semi-darkness on the west side of Bear Grass creek, between Logan street and the creek, and that there was nothing to indicate to the traveler that the street was not continuous and safe until he should reach the arc light on the other side.

It is insisted by appellant that negligence was shown on the part of the city when it was established that an unguarded canal several feet deep was maintained by the city, without any wall on either side of the canal, which would prevent the traveler from driving into it. There is no contention made by the city that the creek, which had been converted into a canal, had any wall or barricade of any kind which would prevent a traveler from driving into the creek.

It is insisted by appellant that the duty rested on the city to see that Lampton street was properly lighted, kept free from obstructions, and that it did not terminate at a creek where a traveler might be led to the peril of his life or limb. It is in evidence that the globes of the arc lights on Lampton street between Logan and Bear Grass creek

were broken and could not be lighted, and that this condition had continued for some time and up to and including the night of the accident. The nearest light burning on the west side of Bear Grass creek was at Shelby street.

There is evidence tending to show that Bear Grass creek was maintained in a dangerous condition at the time of the accident; that Lampton street was not properly lighted; and that the city had not taken the precaution to provide for the warning of travelers against passing off of the paved portion of Lampton street onto the property of the railroad and across the railroad track into Bear Grass creek. The evidence satisfactorily shows that the automobile belonging to appellant's intestate crossed the railroad track and went into Bear Grass creek, where it was discovered about 10:45 p. m. on that night. The body of Overton was not discovered until 9 days thereafter, and it was not found at a point near the automobile, but probably a mile or more distant.

We may assume for the purposes of this opinion that negligence was shown on the part of the city, but that is not sufficient to authorize a reversal of the case unless it can be shown from the evidence, or reasonable inference drawn therefrom, that the negligence of the city was the proximate cause of the death of appellant's intestate.

It is seriously urged by counsel for the city that the evidence discloses that appellant's intestate must have been guilty of contributory negligence, else the accident would not have happened. There is a strong presumption to be drawn from the evidence that he was guilty of contributory negligence, as it is hardly believable that a man unacquainted with a street, when he found it unlighted, would drive off of the paved portions thereof onto the earth. This, of itself, should have warned him that there was something wrong, and that he was going into a place where travel was unusual. Further, the evidence shows that the automobile crossed the railroad track, and that the top of the rails was 5½ inches above the ground. After having driven onto an unlighted street and off of a smooth paved road onto a rough dirt road, and then having found an obstruction like a railroad track, he should have been warned that something was wrong, yet we cannot say, as a matter of law, if he did these things, that he was guilty of contributory negligence. Ordinarily, the question of contributory negligence is one for the jury. Southern Mining Company

v. Lewis' Administrator, 167 Ky. 20, 179 S. W. 1067; Johnson's Administratrix v. Mobile & Ohio R. R. Co., 178 Ky. 108, 198 S. W. 538.

This brings us to the controlling question in the case, and that is whether the negligence on the part of the city, if any, was the proximate cause of the accident. The proximate cause of an accident is that cause without which it would not have happened, or the immediate cause as distinguished from a remote cause. L. & N. R. R. Co. v. Keiffer, 132 Ky. 419, 113 S. W. 433. The proximate cause of an accident is otherwise defined as that which in natural and continuous sequence, unbroken by any independent cause, produces the accident and without which the accident would not have occurred. Proximity in point of time or space is no part of the definition. It is of no importance except as it may afford evidence for or against causation. The mere fact that some other cause operated with the negligence of a defendant will not relieve the defendant from liability. City of Louisville v. Hart's Administrator, 143 Ky. 171, 136 S. W. 212, 35 L. R. A. (N. S.) 207.

If the city was guilty of negligence and appellant's intestate drove his automobile into the canal, which he would not have done but for the negligence of the city, then the negligence of the city was the proximate cause of his death, but we find no evidence in this record which shows that Overton drove his automobile into the canal at this point. It is true, he was last seen in his automobile down in the heart of the city, and he was driving south towards Breckinridge street. No one saw him thereafter, and it is only an inference that he was in his automobile at all when it went into the canal, or, if he was in the automobile, there is no proof to show his condition at the time or whether he was conscious of what he was doing. No one knows how he approached this particular point, if he approached it at all. The only thing that is certain is that he was seen in his automobile within less than an hour of the time when it was found in the creek. It is a mere surmise as to how his automobile reached that point. He may have driven it there himself, or some one else may have taken it from him and left him at some other point. As the proof shows that he was familiar with the city of Louisville and that section of the city, it might be as easily inferred that he was murdered and thrown into the creek at some other point, and that his

murderer drove his car into the creek in attempting to make his escape, as it is to infer that Overton drove the automobile into the creek at this point. If we may presume about it at all, it is more in accordance with reason to presume that he would not have done such a thing than it is to presume that he would have so driven his automobile into the creek. Neither direct nor circumstantial evidence reveals the manner of his death, and unless there is some evidence from which a jury could reach the conclusion that he met his death as claimed by appellant, or unless there was evidence from which a reasonable inference could be drawn that he so met his death, a jury should not be allowed to consider the case, as it is not the province of a jury to speculate as to what might or might not have happened. We are asked in this case to infer that the theory of appellant as to how Overton met his death is correct, and then to infer from that inference that the negligence of the city was the proximate cause of his death. Many inferences may be drawn from the evidence, some of which may coincide with the theory of appellant, while others may coincide with the theory of appellee, but there is no evidence which would make an inference in favor of appellant any stronger than an inference in favor of appellee. Where, under all the evidence, it may be as reasonable to attribute the injury to some cause independent of the proved negligence as it is to attribute it to such negligence, the case should not go to the jury, but a peremptory instruction should be given. Davis, Director General of Railroads v. Burns' Administratrix, 207 Ky. 703, 269 S. W. 763. There must always be some tangible evidence from which it may be fairly said what brought about the injury, as courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents. L. & N. R. R. Co. v. Campbell's Adm'r, 186 Ky. 628, 217 S. W. 687. Where the death of a decedent may as well have been the result of his own negligence or some unexplained happening as the result of negligence on the part of a defendant, it is not a case for the jury, Wintuska's Adm'r v. L. & N. R. R. Co., 20 S. S. W. 819, 14 Ky. Law Rep. 579.

Assuming that the appellant established by her proof that the city of Louisville was negligent in its failure to discharge the duties imposed upon it by law in the maintenance of Bear Grass creek and Lampton street at this point, we fail to find any evidence which establishes that

this negligence was the cause of the death of appellant's intestate. It is true, it may have been the cause of his death, but, on the other hand, it may not have been the cause of his death, and before a recovery can be had in such a case there must be sufficient evidence that the negligence of the defendant was the proximate cause of the accident to enable a jury, with a reasonable degree of certainty, to determine that the accident would not have occurred but for such negligence. It is true that contributory negligence will not be presumed without proof, and it is likewise equally true that it will not be presumed that negligence when shown was the proximate cause of an injury unless there is evidence to that effect. In this case we find no evidence which shows that the negligence of the city brought about the death of Overton, and we find no evidence from which it can be reasonably inferred that such negligence caused the death of Overton, as inferences to the contrary may be as reasonably drawn from the evidence as an inference can be drawn that the negligence of the city caused his death.

Judgment as to both appellees is affirmed.

Judge Dietzman not sitting.