[Civ. No. 8023. First Appellate District, Division One.—June 16, 1932.]

HARRY F. BLACK et al., Appellants, v. SOUTHERN PACIFIC COMPANY et al., Respondents.

322

Daniel A. Ryan, Thomas C. Ryan and George F. Snyder for Appellants.

Louis Oneal, William F. James and Arthur G. Shoup for Respondent Southern Pacific Company.

Norman E. Malcolm and Leon T. David for the Other Respondents.

THE COURT.—An appeal by plaintiffs, who are husband and wife, from a judgment entered upon a verdict in favor of defendant Southern Pacific Company, and from a judgment of nonsuit entered in favor of the other defendants.

On January 19, 1927, plaintiff Florence M. Black was injured when an automobile which she was driving collided with the standard of a wigwag signal near the tracks of the Southern Pacific Company where the same are crossed by Embarcadero Road in the city of Palo Alto. Embarcadero Road was formerly paved with a strip of macadam 18 feet in width extending from the highway, known as El Camino Real, easterly across the railroad tracks. The wigwag signal mentioned was situated on the east side of the tracks of the company a few feet south of the macadamized strip, which crossed them. Previous to August, 1926, proceedings had been taken to widen Embarcadero Road, and before the

date of the accident mentioned its width to the westerly line of the railroad right of way had been increased to 90 feet, and a concrete pavement laid thereon, which was approximately 50 feet wide. This pavement extended from El Camino Real to the westerly line of the railway right of way, and it is not contended that the road or the pavement was widened east of said line. When work was completed in September, 1926, the wigwag signal was at a point which, had the new pavement been extended across the tracks, would have been nearly on its center line. The railroad right of way south of this line was surfaced with rock and gravel, but so far as appears the macadam strip crossing the same was not changed. The lower part of the signal was painted black and the upper part white. Two 100 candle-power lights were maintained near the crossing, but on the easterly side of the track. The night of the accident was dark and rainy, and there were no barriers, lights or other devices at the end of the concrete pavement to warn those using the highway. Mrs. Black drove along the south side of the pavement to the right of way, and then continued her course a distance of about 55 feet, when the automobile struck the standard of the signal device, with the result that she was injured.

The complaint alleged in substance that at all the times therein mentioned the defendants other than Southern Pacific Company, Marx, Hare and Byxbee were members of the city council of the municipality; that defendants Marx and Hare were members of its board of public works, and that defendant Byxbee was its city engineer; that prior to January 19, 1927, they paved an additional 20 feet in width of said Embarcadero Road extending to the easterly side of the railroad right of way, approximately doubling the width of the paved portion of the road; that when the work was completed the said signal device encroached on the southerly side of the traveled portion of the highway where the same crosses the right of way and was approximately in the center of the highway as projected across said right of way, and at all times constituted a danger to persons using the highway; that defendants negligently failed to take any precautions to warn travelers of the danger caused by the acts and conditions described, or to place any barriers or lights, or to give warning of the conditions there existing.

The defendants other than Southern Pacific Company joined in an answer, in which it was not denied that they were the officers of the municipality at the time of the accident, as alleged in the complaint, but it was denied that they or any of them paved Embarcadero Road, or had charge or control of the public streets of the municipality at any of the times mentioned in the complaint. They also denied the negligent acts and the injury alleged. The Southern Pacific Company also denied that the alleged injury was due to its negligence, and both answers averred as separate defenses the contributory negligence of plaintiff Florence M. Black.

The action was not brought against the municipality, but against its officers named. The law appertaining to the liability of such officers is found in Act 5618, Deering's General Laws, Statutes of 1919, page 756, which provides that "No officers of any district, town, city, city and county, county, or of the state of California, shall be liable for any damage or injury to any person or property hereafter resulting from the defective or dangerous condition of any public street, highway, bridge, building, work or property, unless it shall first appear: (1) that the injury sustained was the direct and proximate result of such defective or dangerous condition, (2) that such officer had notice of such defective or dangerous condition, or that such defective or dangerous condition was directly attributable to work done by him, or under his direction, in a negligent, careless or unworkmanlike manner, (3) that he had authority and it was his duty to remedy such condition at the expense of the state or of a political subdivision thereof and that funds for that purpose were immediately available to him, and that (4) within a reasonable time after receiving such notice and being able to remedy such condition he failed so to do, or failed to take reasonable steps to give adequate warning of such condition; and then only when it shall further appear that such damage or injury was sustained while such public street, highway, bridge, building, work or property was being carefully used, and that due care was being exercised to avoid the danger due to such condition; provided, however, that this act shall not be construed as enlarging the duty or liability of any public officer."

The charter of the city of Palo Alto was adopted in 1908 and approved by the legislature in 1909 (Stats. 1909, p. 1175). It created a city council and a board of public works. The municipality was empowered "to establish and change the grade, lay out, open, extend, widen, change, vacate, pave, repave or otherwise improve all public streets and highways . . . ", and all powers so granted were vested in the city council except as therein otherwise provided (Charter, arts. II, III). The board of public works was authorized to carry out the above powers, namely, to widen, change, pave or repave all public streets and highways (Charter, art. V, sec. 2) and to appoint as its executive officer an engineer, who should also be the street superintendent (Charter, art. V, sec. 4). The duties of the engineer were to supervise, manage and construct, operate and maintain the properties and all things under the control of the board of public works (Charter, art. V, sec. 4). Section 3 of article V of the charter provides that "whenever any street work or other improvement is to be done or performed, and the cost of the whole or any portion thereof is to be paid by any special assessment levied upon property, all such proceedings shall be had and carried on by the council upon the recommendation of the board of public works"; and an amendment to section 10 of article IX of the charter (Stats. 1911, p. 2042) provides: "In the erection, improvement and repair of all public buildings and work, in all street and sewer work, done under and by authority of the laws of the state of California creating a bonded indebtedness of the municipality, or done under and by authority of any of the street laws of the state of California, which laws are hereby made a part of this charter, the work shall be let to the lowest responsible bidder; provided, however, the council may reject any and all bids if deemed excessive, and re-advertise for bids, or provide for the work to be done by the department of public works. When the estimate of the cost of said work by the city engineer shows that said work can be done for an equal or less cost than that of the lowest bid, then any of the work herein mentioned may be done by the department of public works, and the said department shall be deemed the contractor, with the right to enforce all liens, and with the same powers, rights, duties and obligations as are made and provided by the laws of the state for con-

tractors who have entered into contracts to do such work as the lowest responsible bidder.''

The only evidence that the widening or paving of Embarcadero Road was done by any board or officer of the municipality is the testimony of defendant Byxbee, the city engineer, who stated that the work was done for the city by its board of public works as contractor under Byxbee's direction. This was sufficient to show that the work was done as testified (*Foutz* v. *Los Angeles,* 167 Cal. 487 [140 Pac. 20]), and it is undisputed that the same was completed about September 15, 1926.

It was held before the adoption of the above statute (Act 5618, Deering's Gen. Laws, Stats. 1919, p. 756), that where the act done is one commanded by the municipality and is inherently wrong both the municipality and the agent will be liable; but if the injury results not from the wrongful plan or character of the work, but from the negligent or improper manner in which it is performed, the one so negligently acting will always be responsible; and a public corporation may or may not be responsible depending upon the circumstances (*Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50]). Here there is no claim that there were defects in the work done, but that, in view of the condition in which the crossing would be left in case the railroad company made no corresponding changes, the city and its officers, by omitting to make provision for warnings or barriers, rendered the improvement inherently dangerous, and the statute itself imposes a liability if the defective or dangerous condition is directly attributable to work done by an officer or under his direction in a careless or negligent manner.

While the record discloses no evidence that the engineer or any member of the board of public works had knowledge or notice before the accident that the crossing had not been widened, it has been held that where the dangerous condition is due to the negligent act or omission of the officers doing or directing the work it is unnecessary to prove as a condition to liability that they had notice of the condition, and the authority and duty, with funds available, to correct it (*Moore* v. *Burton,* 75 Cal. App. 395 [242 Pac. 902]). Nor should a different rule prevail where a proposed improvement will be reasonably certain to endanger the public unless precautionary measures are taken as a

part of the projected work, and it is completed and left without the necessary safeguards. The board of public works was charged with the duty of carrying out the powers conferred upon the city respecting the opening, widening and paving of streets; and, as stated, the engineer with the duty of supervising, managing, constructing, operating and maintaining the properties and things under the control of the board. There may have been a reason for leaving the work without barriers or warnings, but none appears; and the evidence was sufficient to justify the conclusion that the improvement was carelessly planned and executed, and that the omissions complained of constituted negligence on the part of the officers having charge of street work.

The statute, however, creates another condition to liability, namely, that it must appear that the damage claimed was sustained while the street was being carefully used and that due care was being exercised to avoid the danger.

It is contended that there was no evidence of due care in the operation of the automobile; and that, on the contrary, its lights were such as to make its operation negligent as a matter of law.

According to Mrs. Black, she had not traveled this road for several months, the night was dark and foggy and it was raining heavily, and, due to atmospheric conditions, she was unable to see more than fifteen feet ahead. She also testified that the car was stopped at a point about 200 feet from the crossing in order to wipe the windshield, and that she and her son, who was riding with her, looked ahead to avoid danger as they proceeded toward the end of the pavement, but failed to observe the conditions there until too late to prevent the collision.

Section 99 of the California Vehicle Act, at the time this collision occurred, provided: "Every vehicle when upon any public highway within this state during the period from a half hour after sunset to a half hour before sunrise, and at any time when there is not sufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of 200 feet ahead, shall be equipped with lighted lamps and lighted headlights as herein respectively provided for different classes of vehicles, and subject to such exceptions as are set forth in this act"; and section 101 of the act, that the headlights of motor vehicles should

be so constructed, arranged and adjusted that they will at all times mentioned in section 99 and under normal atmospheric conditions produce ample driving light for use of the operator of such vehicle. . . . '' Failure to conform to the statute with respect to the use of headlights has been held to be negligence *per se* (*Fouch* v. *Werner*, 99 Cal. App. 557 [279 Pac. 183]). But the two sections above are to be read together. The requirement as to the sufficiency of the lights has reference to normal atmospheric conditions (*Olden* v. *Babicora Development Co.*, 107 Cal. App. 399 [290 Pac. 1062]), and the first does not regulate the quantity or quality of the lights nor establish 200 feet as the distance which must be lit by such lights, but merely states the conditions under which lighting is required (*Sawdey* v. *Producers' Milk Co.*, 107 Cal. App. 467 [290 Pac. 684]). Nor in all cases is it negligence as a matter of law for one to operate a motor vehicle at night at a speed greater than that which will permit the vehicle to be brought to a stop within the radius illuminated by his lights, as this question depends upon atmospheric conditions and the known condition of the highway (*Sawdey* v. *Producers' Milk Co., supra; Ham* v. *County of Los Angeles*, 46 Cal. App. 148 [189 Pac. 462]).

We are convinced in this connection also that in view of the testimony and the circumstances disclosed by the evidence, which on a motion for nonsuit must be construed most favorably to her, it cannot be said as a matter of law that Mrs. Black was not proceeding with due care, nor that the condition of the lights on her car was such as to negative that conclusion.

For the above reasons we believe that the questions both of the negligence of defendant members of the board of public works and the city engineer, and of the care used by Mrs. Black in the operation of her car, were properly for the jury.

At the close of plaintiff's case the court granted a nonsuit as to defendant officers, after which the case proceeded as against defendant Southern Pacific Company. The jury returned a verdict in favor of the company, and from the judgment entered thereon plaintiffs have appealed, claiming that the court erred in certain of its instructions to the jury.

They were instructed that no duty rested upon the railroad company to place or maintain any barrier at the end of the new pavement adjoining its right of way or give warning of the conditions there.

 Where the right to open a street across a railroad right of way has been acquired it is the duty of the company at its own expense to make the necessary structural changes, such as placing planks between the rails and two feet outside thereof, and other crossing changes, in order that the railroad may be safely operated, and as a general rule it must maintain such crossings in good condition (*City of Oakland* v. *Schenck*, 197 Cal. 456 [241 Pac. 545]).

 But it is well settled that a railroad right of way is so far private property as to be entitled to the protection of the Constitution, and that it can only be taken without its consent under the power of eminent domain, a condition precedent to such taking being that provision be made for reasonable compensation to the company (*Western Union Tel. Co.* v. *Pennsylvania R. R. Co.*, 195 U. S. 540 [1 Ann. Cas. 517, 49 L. Ed. 312, 25 Sup. Ct. Rep. 133]; *City of Oakland* v. *Schenck, supra*).

Section 43 of the Public Utilities Act provides that no public road, highway or street shall be constructed across the track of any railroad corporation at grade without having first obtained the permission of the Railroad Commission, and that the commission shall have exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing; and of the installation, use, maintenance and operation of safety devices and appliances (Public Utilities Act, secs. 42, 43). It may also exercise the power of eminent domain in proceedings involving the taking of the property of public utilities, with the power of making awards in such cases (Public Utilities Act, sec. 43; *Pacific Telephone etc. Co.* v. *Eshleman*, 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *City of San Jose* v. *Railroad Com.*, 175 Cal. 284 [165 Pac. 967]; *S. H. Chase Lumber Co* v. *Railroad Com.*, 212 Cal. 692 [300 Pac. 12]).

 It is undisputed that the traveled portion of Embarcadero Road before it was widened was macadamized and that the same width of macadam extended over the cross-

ing. There is no evidence that previous to the accident the right to widen the crossing was acquired or that the company was under a duty to do so, nor, so far as appears, was any order made by the commission before that date permitting or requiring this, or a change in the location of the signal device. The record discloses no right in persons using the highway to pass over the right of way other than at the place previously established and in use; and it is the rule that persons who go upon a railroad track or right of way except at public crossings, or in public streets or highways, or at private crossings maintained for their own use and benefit without the consent of the company, are trespassers, to whom the company owes no duty to facilitate the trespass or render it safe, although bound to use ordinary care in the operation of its road to avoid injury after seeing the trespasser in a dangerous position (*Reed* v. *South San Francisco etc. Co.,* 181 Cal. 392 [184 Pac. 669]; 52 Cor. Jur.; secs. 1772, 2105, pp. 177, 536). Accordingly it was held in *Hildebrand* v. *Hines,* 170 Pa. 86 [14 A. L. R. 1393, 112 Atl. 875]), that a railroad was not liable to a pedestrian who on a dark and foggy night, in seeking to cross its tracks, left the cement sidewalk provided and, while passing over another portion of the right of way, fell and received injuries. So in *Overton's Admx.* v. *City of Louisville,* 221 Ky. 289 [298 S. W. 968], it was held that a railroad company was under no duty to warn against danger where a public street if extended would pass over its right of way into a stream. To the same effect are the following cases: *Gulf, M. & M. R. R. Co.* v. *Pistole,* 218 Ala 695 [120 South. 159]; *Shahan* v. *Northern Texas Traction Co.,* (Tex. Civ. App.) 266 S. W. 850; *Gulf, C. & S. F. Ry. Co.* v. *Woods,* (Tex. Com. App.) 290 S. W. 729.

 It is clear that a railroad company is not obliged to widen its crossings without an order from the Railroad Commission or to warn travelers upon the public highway of the danger of attempting to pass over its right of way at places other than established crossings. It is also the rule that where an abutting owner has exercised ordinary care in the use of his own property he is not liable for injuries incidentally resulting to a traveler on the highway (29 Cor. Jur., Highways, sec. 443, p. 679; 13 Cal. Jur., Highways, sec. 80, p. 397; *Rozell* v. *Northern Pac. R. R. Co.,*

39 N. D. 475 [167 N. W. 489], or for an injury resulting from defects in streets or highways not caused by his affirmative act (43 Cor. Jur., Municipal Corporations, sec. 1866, p. 1103; *Eustace* v. *Jahns*, 38 Cal. 3; *Martinovich* v. *Wooley*, 128 Cal. 141 [60 Pac. 760]). And while in the present case the condition in which the street was left after the improvements were made was likely to mislead travelers as to the width of the crossing, this condition was not created by the railroad company or upon its property, and it was under no duty to warn of the danger of deviating from the established crossing; nor as between the company and plaintiffs was there a duty to fence its right of way along the newly paved portion of the highway (12 Cal. Jur., Fences, sec. 5, p. 493).

In *Barrett* v. *Southern Pac. Co.*, 207 Cal. 154 [277 Pac. 481], relied upon by plaintiffs—which was an action for damages for personal injuries sustained as a result of an automobile striking a stone pier erected and maintained in the middle of the highway as a support for an overhead bridge upon which the railroad was operated—it was held that while the erection of the bridge and pier were authorized by statute it was a question for the jury whether the pier was maintained in such a way as to afford security for life and property where the prevalence of heavy fogs at night in that locality was shown, and there was an absence of lights or other danger signals on or near the pier, which was not painted a color tending to make it visible during foggy weather. In the present case, however, all the things which the court in the Barrett case held to be necessary for proper maintenance had been done. The crossing was lighted; the signal was painted different colors and situated a sufficient distance south of the macadamized way to allow vehicles operated with ordinary care to pass over without danger. Moreover, the instruction complained of referred to conditions at the end of the new pavement on Embarcadero Road and not to the signal device.

What we have said applies equally to another instruction, stating in substance that the company was not bound to anticipate that any person lawfully traveling upon the paved highway as it crossed the tracks would come in contact with the signal device.

In view of the above both of these instructions were proper, as was also an instruction that the Railroad Commission had exclusive jurisdiction over the crossing and the location, maintenance and use of warning devices thereon, which could not be changed without its authority (Public Utilities Act, sec. 42).

By two other instructions the jury was told that a railroad company is justified in placing mechanical devices at a crossing for the purpose of warning travelers of danger at that point, and that if such device be not so placed as to be an obstruction in the traveled portion of the highway the company cannot be held to be negligent in maintaining it; also that plaintiffs alleged that the signal device was situated in the highway, but if the jury found that it was situated on the private property of the company plaintiffs had failed to maintain their cause in that particular.

The latter contend that while it is admitted that the signal device was south of and not upon the traveled portion of the highway, namely, the macadamized strip which crossed the tracks, the question of its negligent maintenance in the highway was nevertheless one for the jury; further, that there was no evidence that the device was upon the private property of the company, and the second instruction was consequently erroneous.

The complaint alleged that the signal device was situated in the highway; and the burden rested upon plaintiffs to show that fact (29 Cor. Jur., Highways, p. 637); but the record is silent as to how or when the public acquired the right to cross or the extent of the right. So far as shown, this was limited to the way actually in use, namely, the macadamized strip. It has been held that where a highway has been laid out pursuant to statutory proceedings it will be presumed that it was for the full legal width (*Lenhart* v. *Wright,* 286 Pa. 351 [133 Atl. 495]; *McGarry* v. *Runkel,* 118 Wis. 1 [94 N. W. 662]; *Taylor* v. *Austin,* 83 Neb. 581 [119 N. W. 1123]; *Hentzler* v. *Bradbury,* 5 Kan. App. 1 [47 Pac. 330]; and plaintiffs urge that the same rule applies here, as the statute requires every highway to be at least 40 feet wide (Pol. Code, sec. 2620); but, as held in *Mulch* v. *Nagle,* 51 Cal. App. 559 [197 Pac. 421], this section has application to such highways as are laid out by formal act

of the public authorities, and not those created by dedication. The charter of the city of Palo Alto empowered its board of public works to lay out, open and extend all public streets and highways (Charter, art. V, sec. 2, subd. 3; Stats. 1909, p. 1175). The opening of public streets is a municipal affair within the meaning of section 6 of article XI of the Constitution (*Byrne* v. *Drain,* 127 Cal. 663 [60 Pac. 433]), and the charter provision will supersede the general law (*Sunter* v. *Fraser,* 194 Cal. 337 [228 Pac. 660]). In addition, as stated, the Railroad Commission had the power to prescribe the conditions upon which a highway at grade might be constructed, and to require the installation and maintenance of a signal device at the crossing. There is no presumption as to how the right was acquired or its extent, nor could the inference that it was in excess of actual use be justified by any of the facts shown. Moreover, the location of the signal within the highway would have constituted a public offense (Pen. Code, sec. 370). It is presumed that persons are innocent of crime or wrong and that the law has been obeyed (Code Civ. Proc., sec. 1963, subds. 1, 33), also that a person exercising acts of ownership over property is the owner thereof (*McGovern* v. *Mowry,* 91 Cal. 383 [27 Pac. 746]). Presumptions have the effect of evidence (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]); and unless controverted the jury is bound to find in accordance therewith (*Stafford* v. *Martinoni,* 192 Cal. 724 [221 Pac. 919]; *In re Jolly's Estate,* 196 Cal. 547 [238 Pac. 353]); and while the trial court may not invade the province of the jury by charging on questions of fact, nevertheless, where only one conclusion may properly be drawn from the evidence it may so instruct (*People* v. *King,* 27 Cal. 507 [87 Am. Dec. 95]; *People* v. *Welch,* 49 Cal. 174; *Whitney* v. *North British etc. Ins. Co.,* 76 Cal. 415 [9 Am. St. Rep. 216, 18 Pac. 758]). Such was the effect of the first instruction; and in view of the evidence it was not error.

The same is true of the second, as the physical facts were sufficient to support a finding that the signal device was situated upon the private property of the company.

Plaintiffs complain of other instructions as to Mrs. Black's duty in the operation of the automobile, the question and effect of her negligence and the burden of proof in that regard. We agree with plaintiffs that these instructions

were in some respects erroneous, and under ordinary circumstances would have been prejudicial; but in view of our conclusion that no negligence on the part of the railroad company was established, and that a verdict against it would have been contrary to the evidence, the giving of the erroneous instructions is not ground for reversal (2 Cal. Jur., Appeal and Error, sec. 611, p. 1026; *Hughes* v. *Wheeler*, 76 Cal. 230 [18 Pac. 386]; *Bechtel* v. *Chase*, 156 Cal. 707 [106 Pac. 81]).

For the foregoing reasons the judgment entered upon the verdict in favor of defendant Southern Pacific Company is affirmed. The judgment of nonsuit entered in favor of defendants C. D. Marx, M. H. Hare and J. F. Byxbee is reversed and the same judgment in favor of the remaining defendants is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 16, 1932, and an application by appellants and respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1932.